854 So.2d 167 (2003)
Bruce Douglas PACE, Appellant,
v.
STATE of Florida, Appellee.
Bruce Douglas Pace, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC01-1831, SC02-519.
Supreme Court of Florida.
May 22, 2003.
Rehearing Denied September 2, 2003.
*169 Michael P. Reiter, Capital Collateral CounselNorthern Region, and John M. Jackson, Assistant CCC-NR, Office of the Capital Collateral Representative, Northern Region, Tallahassee, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Curtis M. French, Senior Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Bruce Douglas Pace appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Pace also files a petition for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the circuit court's order denying Pace's rule 3.850 motion, and we deny Pace's petition for a writ of habeas corpus.

BACKGROUND
On November 7, 1989, investigators found Floyd Covington's bloodstained taxicab in a wooded area. Bloodstain patterns indicated that Covington was shot while he was sitting in the driver's seat, with the first shot coming from the passenger's side. Covington's body was found three days later in another wooded area approximately twelve miles from where the taxicab was found. Covington had been shot twice with a shotgun. Serology testing showed that the blood in the taxicab was consistent with Covington's type. An investigation led police to Pace, who was an acquaintance of Covington's.
During Pace's trial, the State presented evidence that Pace was seen driving Covington's taxicab on the morning of the murder; Pace's clothing had bloodstains that were consistent with Covington's blood type; Pace's fingerprint was found on the driver-side window of the taxicab; and Pace stated to a witness the night before the murder that he was going to do something he hated to do because he needed money. Pace's stepfather testified that Pace informed him that after Covington had given Pace a ride to his stepfather's *170 home, Pace entered the home through an open window and was choked to unconsciousness. Pace told his stepfather that he awoke in the woods, lying next to a shotgun and Covington's car, and after noticing blood in the car, he grabbed the gun and left the scene. Also, on the morning after the murder, Pace's stepfather recovered from the front yard of his house two shotgun shells that were consistent with the type used to kill Covington. Pace had possession of the shotgun believed to be the murder weapon. A jury convicted Pace of first-degree murder and armed robbery.
During Pace's penalty phase, the State introduced a copy of a judgment of conviction for strong-arm robbery that Pace committed on December 4, 1981, for which he had received a fifteen-year sentence. Additionally, the State presented the testimony of probation officer Robert Mann, who testified that Pace was on parole at the time of the murder. Pace's counsel presented five witnesses: Paul Campbell, a correctional officer, who testified that Pace had been a model prisoner; Hurley Manning, Pace's high school football coach, who testified that Pace had been a hard-working football player and the type of player you would want in the program; Robert Settles, Pace's former employer, who testified that Pace had been a master sawman with a lot of potential, which Pace unfortunately had not lived up to; Evelyn Rich, Pace's aunt, who testified that Pace was a loving, caring person who came from a good, supportive family; and Lillian Rich, Pace's mother, who testified that Pace worked to support the family after Pace's stepfather left when Pace was thirteen or fourteen years old.
During the penalty phase closing arguments, the State argued that five aggravating circumstances applied: (1) Pace was on parole at the time of the murder; (2) Pace was previously convicted of a violent felony; (3) the murder was committed during the commission of a robbery; (4) the murder was committed to avoid arrest; and (5) the murder was committed in a cold, calculated, and premeditated manner. Pace's counsel argued that Pace was a human being and a good person with a good heart, and that the State exaggerated the aggravating circumstances of the murder.
The jury recommended by a seven-to-five vote that Pace be sentenced to death. The trial court followed the jury's recommendation and sentenced Pace to death, finding three aggravating circumstances: (1) Pace had a previous conviction for a violent felony; (2) Pace was on parole at the time of the murder; and (3) the murder was committed during the course of a robbery. The trial court found no mitigating circumstances. See State v. Pace, No. 88-CF-689 order at 3 (Fla. 1st Cir. Ct. order filed Nov. 16, 1989).
Pace appealed to this Court, raising seven issues.[1] This Court affirmed Pace's convictions and sentence. This Court found that the trial court erred by limiting Pace's cross-examination of a witness regarding a third shotgun shell but held that the error was harmless. Regarding Pace's penalty phase, this Court held:

*171 [T]he aggravating circumstances of previous convictions of felony involving violence, committed while on parole, and committed while engaged in a robbery are all supported beyond a reasonable doubt. The trial judge found no statutory mitigating circumstances and, after reviewing the nonstatutory mitigating evidence, concluded that none of the suggested mitigating factors had been established. Considering the totality of the circumstances, we conclude that the record supports the trial judge's conclusion. Accord Floyd v. State, 569 So.2d 1225 (Fla.1990). Even if one or more nonstatutory mitigating factors were wrongfully rejected, we are persuaded beyond a reasonable doubt that the weight thereof was so insignificant that the trial judge would have imposed death. Because the aggravating circumstances outweigh any nonstatutory mitigating evidence, death is the appropriate penalty. Accord Eutzy v. State, 458 So.2d 755 (Fla.1984), cert. denied, 471 U.S. 1045, 105 S.Ct. 2062, 85 L.Ed.2d 336 (1985); Johnson v. State, 438 So.2d 774 (Fla.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984).
Pace v. State, 596 So.2d 1034, 1035-36 (Fla.1992).
On March 7, 1997, Pace filed an amended rule 3.850 motion for postconviction relief, raising twenty-one claims.[2] The circuit court below (postconviction court) held a Huff[3] hearing, thereafter summarily denied several of Pace's claims, and scheduled an evidentiary hearing on the remaining claims. Following the evidentiary hearing, the postconviction court entered a final order denying all relief. Pace v. State, No. 88-CF-689 (Fla. 1st Cir. Ct. order filed June 11, 2001) (postconviction order). Pace now appeals the postconviction court's denial of his rule 3.850 motion. He also petitions this Court for a writ of habeas corpus.

RULE 3.850 APPEAL
Pace's rule 3.850 appeal asserts the following: (1) the postconviction court erred by denying Pace's claim regarding ineffective assistance of penalty-phase counsel; (2) the postconviction court erred by denying Pace's claim regarding ineffective assistance of guilt-phase counsel; (3) the *172 postconviction court erred by denying Pace's Brady[4] claims; (4) the postconviction court erred by denying Pace's claim regarding ineffective assistance of guilt-phase counsel for failing to object to prosecutorial comments on Pace's silence; (5) Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), renders Florida's capital sentencing scheme unconstitutional; and (6) the postconviction court denied Pace access to public records. We now address each issue raised.

Issue I. Ineffective Assistance of Penalty-Phase Counsel
To establish a claim of ineffective assistance of counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052. Additionally, "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. In Occhicone v. State, 768 So.2d 1037 (Fla.2000), this Court stated: "Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions. Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Id. at 1048 (citations omitted).
Regarding the review of a postconviction court's Strickland analysis, this Court stated:
[T]he performance and prejudice prongs are mixed questions of law and fact subject to a de novo review standard but... the trial court's factual findings are to be given deference. See Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999). So long as its decisions are supported by competent, substantial evidence, this Court will not substitute its judgment for that of the trial court on questions of fact and, likewise, on the credibility of the witnesses and the weight to be given to the evidence by the trial court. Id. We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact.
Porter v. State, 788 So.2d 917, 923 (Fla. 2001). Pace claims that penalty-phase counsel was ineffective for failing to present evidence of Pace's history of crack addiction and for failing to provide an adequate mental health examination. Pace further claims that penalty-phase counsel *173 was ineffective for failing to present evidence of Pace's difficult childhood.

A. Failure to Investigate and Present Evidence of Crack Addiction and Failure to Provide an Adequate Mental Health Examination
Pace's first claim of ineffective assistance of penalty-phase counsel involves three subclaims: (1) counsel was ineffective for failing to investigate and present evidence; (2) counsel was ineffective for failing to adequately prepare mental health experts; and (3) counsel was ineffective for failing to have Pace examined by a neuropsychologist. The postconviction court found that there was no deficient performance and therefore did not address the prejudice prong.
Pace alleges that penalty-phase counsel Sam Hall was ineffective for failing to investigate and present evidence that Pace was addicted to crack. "[A]n attorney has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence." State v. Riechmann, 777 So.2d 342, 350 (Fla.2000). This claim was rejected by the postconviction court after the evidentiary hearing. At the hearing, attorney Hall testified that at the time of Pace's trial, Hall considered himself an experienced capital attorney. Hall had fully tried one capital case and worked substantially on another prior to Pace's trial. He further testified regarding the details of the penalty-phase investigation.
The postconviction court found that the evidence presented at the evidentiary hearing showed that Hall's investigation consisted of the following: (1) deposing several witnesses; (2) utilizing an investigator to interview witnesses for potential mitigating evidence; (3) obtaining witness statements from the State; (4) obtaining Pace's school records; and (4) securing two mental health experts, psychologist Dr. James Larson and psychiatrist Dr. Peter Szmurlo, to examine Pace. Dr. Larson and Dr. Szmurlo provided Hall with examination reports that did not reveal any significantly mitigating information and were otherwise unfavorable to Pace. Although Dr. Szmurlo's examination report stated that Pace denied having any psychiatric problems "[e]xcept for a rather heavy use of cocaine," attorney Hall testified that Pace consistently related to Hall that he was suffering from no drug-related effects at the time of the offense. Neither expert requested that Pace be evaluated by an addiction specialist nor indicated that Hall's crack use might have affected his mental health at the time of the offense. Hall interviewed several of Pace's friends and relatives regarding Pace's crack use but, as the postconviction court stated, "individuals close to Pace failed to disclose any information that either augmented or sharply contradicted Pace's own self reports of crack use." Postconviction order at 13. We find no error in the postconviction court's denial of relief based upon that court's detailed evaluation of the evidence.
Regarding Pace's claim that Hall was ineffective for failing to present evidence of Pace's crack use, the postconviction court concluded that "given the unfavorable psychological opinions, counsel's tactical decision to humanize [Pace] and not present any evidence of his drug use was a reasonable strategy." Postconviction order at 20. The postconviction court's conclusion is supported by the testimony regarding Pace's representations to Hall and by the generally unfavorable expert opinions. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691, 104 S.Ct. 2052. Thus, there is competent, *174 substantial evidence to support the postconviction court's finding that Hall made a strategic decision to present Pace's positive attributes over evidence of his crack use. We find no legal error in the postconviction court's determination that Hall's decision was not deficient performance in light of the information that both the experts and Pace provided to Hall. Cf. Rutherford v. State, 727 So.2d 216, 223 (Fla.1998).
Pace asserts that in denying this claim, the postconviction court erroneously relied upon the same assumption that Hall had relied uponthat Pace had to be under the influence of drugs at the time of the offense. However, we do not find that either Hall or the postconviction court relied upon such an assumption. Hall's testimony was that in his experience, Pace's cocaine addiction would only be considered "significantly" mitigating if some effect of the addiction could be linked to Pace's conduct at the time of the offense. Because Pace continued to assert that he was not affected by his crack use at the time of the offense and because Dr. Larson and Dr. Szmurlo, the experts hired by Hall, did not report that Pace's crack use affected his mental health at the time of the offense, Hall concluded that evidence of Pace's past crack use would be more prejudicial than beneficial under the circumstances of the defense. Hall concluded that the evidence of crack use would be contrary to his strategic efforts to emphasize with the jury that Pace "had some good qualities and was a human being who should be saved." Our review of the postconviction order reveals that the court made a factual determination based upon the evidence presented that Hall's decision was strategic and that the postconviction court applied the correct rule of law.
Pace's second claim of ineffective assistance of penalty-phase counsel asserts that Hall was ineffective for failing to adequately prepare mental health experts, effectively denying Pace an adequate mental health evaluation. Pace points to the fact that had Hall provided Dr. Szmurlo and Dr. Larson with the information that postconviction counsel provided, both experts would have found that both statutory mental mitigators were applicable.[5] Pace also asserts that Hall was ineffective for failing to explain mitigating circumstances to Dr. Szmurlo.
In its detailed order, the postconviction court denied this claim and stated:
[Pace] asserts that Szmurlo and Larson improperly diagnosed Pace due to the failure of counsel to provide the experts with sufficient background information. This claim is without merit for several reasons. First and foremost, trial counsel's investigation into [Pace's] drug use was reasonable based upon the representations of [Pace] and others. Second, counsel did not withhold any essential information from either expert that was within their possession. Third, neither expert believed at the time of the original evaluation that they had inadequate information to render a diagnosis nor requested additional information from counsel. Fourth, counsel did provide the experts with information *175 that contained insight into [Pace's] background.
The record reveals that counsel provided Szmurlo and Larson with police investigative reports that contained information pertaining to [Pace's] crack use, hygiene issues, emotional state, and the fact that he stayed in an abandoned house. Counsel also provided Dr. Larson with numerous pretrial statements and depositions. In addition to the background materials, each expert had an opportunity to interview [Pace] and Pace reported heavy crack use to both of them. Despite their knowledge of his crack use and aberrant behavior, both experts failed to develop the presence of organic brain damage or statutory mental mitigation during their initial evaluations. In addition, neither expert recommended that an addictions specialist examine Pace. Counsel is not deficient for relying upon the experts' opinions and deciding not to further investigate or present information on Pace's crack use or organic brain damage.
Moreover, the fact that [Pace] has now secured favorable testimony of mental mitigation and brain damage from Dr. Michael Herkov and Dr. Barry Crown does not render counsel's investigation into mitigation ineffective. See Asay v. State, 769 So.2d 974, 986 (Fla. 2000); Jones v. State, 732 So.2d 313, 320 (Fla.1999); Rose v. State, 617 So.2d 291, 294 (Fla.1993). See also Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997) (stating "mere fact a defendant can find, years after the fact, a mental health expert who will testify favorably for him does not demonstrate that trial counsel was ineffective for failing to produce that expert at trial."). Counsel diligently obtained two mental health professionals to examine Pace prior to trial but those experts failed to provide counsel with favorable information. As indicated above, counsel is not deficient for reasonably relying upon the opinions of Szmurlo and Larson and not seeking out additional experts. See Card v. Dugger, 911 F.2d 1494, 1513 (11 Cir. 1990) (stating counsel is not required to shop for a psychiatrist who will testify in a particular way).
Furthermore, the fact that Szmurlo and Larson have now changed their diagnosis does not render counsel's background investigation ineffective. At the evidentiary hearing, Szmurlo and Larson both testified that they currently believe that Pace was suffering from an emotional disturbance at the time of the murder and his ability to conform his conduct to the requirements of the law was impaired. However, the information that Szmurlo and Larson attribute to this change in opinion is comprised primarily of individuals who have changed their accounts of Pace's behavior or other information that counsel had no reason to pursue due to the representations of [Pace] and others.
Of the 10 recently obtained affidavits that collateral counsel submitted to the experts, trial counsel had deposed five of the affiants prior to Pace's trial. Barry Copeland, Ella Mae Green, Melanie Pace, Cynthia Pace, and Hilda Pace were each questioned regarding Pace's drug use and none of these witnesses offered information they provided in the recent affidavits. Trial counsel cannot be deemed ineffective for failing to provide information to mental heath experts that the affiants chose not to disclose to counsel when originally questioned. As for the remaining affiants, trial counsel had no reason to pursue these individuals in light of the information they received from [Pace] and his friends and family.

*176 Collateral counsel also provided the experts with a presentence investigation report ("PSI") for his strong arm robbery conviction and Pace's school records. Although this information was available to counsel prior to [Pace's] trial, counsel is not obligated to pursue every conceivable record that pertains to [Pace's] background. Trial counsel had information on the prior offense from the records he obtained from the Department of Corrections and made a tactical decision to limit information on this offense to the experts. Further, trial counsel were aware that [Pace] did not have significant disciplinary problems in school and that he graduated from high school. Thus, trial counsel is not deficient for failing to obtain records that counsel had no reason to believe contained any favorable mitigating information.
In addition, collateral counsel provided Szmurlo with Section 921.141, Florida Statutes (1999), the statute governing aggravating and mitigating circumstances. [Pace] contends that counsel were ineffective for failing to provide Szmurlo, who was inexperienced in evaluations for capital cases, with more explicit instructions on mitigation. The record reveals that counsel sent Szmurlo a letter detailing the scope of the evaluation and directing him to look for "mitigating circumstances." No other explanation was provided but Szmurlo testified at the evidentiary hearing that he understood that he was looking for anything of significance from a psychiatric standpoint that would have rendered [Pace's] judgment to be deficient. Although Szmurlo was not aware of the statutory definition of mitigating circumstances pursuant to section 921.141(6), Fla. Stat. (1989), the term mitigation has a common meaning and his testimony demonstrates that he understood his role. Therefore, counsel's failure to provide Szmurlo with a legal definition of mitigation did not adversely impact his evaluation. See generally Roche v. State, 690 N.E.2d 1115, 1128 (Ind.1998) (stating that the term mitigation is a term of general use that is understood by persons of ordinary intelligence).
Postconviction order at 16-19 (footnotes and record citations omitted).
We find that there is competent, substantial evidence to support the postconviction court's findings of fact, and we find no error in the trial court's denial of Pace's second subclaim of ineffective assistance of penalty-phase counsel.
Pace's third subclaim asserts that penalty-phase counsel was ineffective for failing to have Pace examined by a neuropsychologist. This claim was properly rejected by the postconviction court as being without merit. Neither of the two experts who examined Pace indicated the possibility of brain damage after both administered neuropsychological testing, and a capital defendant does not have an independent right to be examined by a neuropsychologist.

B. Failure to Present Evidence of Pace's Difficult Childhood
Pace next asserts that Hall was ineffective for failing to present evidence that Pace suffered a difficult childhood and was greatly affected by the death of his grandmother. We find no error in the postconviction court's determination that Pace failed to demonstrate that Hall was deficient in respect to this evidence. There was evidence presented at the evidentiary hearing which indicated that Pace received stricter punishment from his stepfather (with no elaboration as to the punishment), that he was affected by his *177 stepfather's departure and return, and that Pace was close to his grandmother and became withdrawn after her death. However, there was competent, substantial evidence supporting the postconviction court's conclusion that the evidence presented at the evidentiary hearing failed to establish an abusive childhood. Moreover, evidence concerning the fact that Pace's stepfather had abandoned the family during Pace's childhood was presented during the penalty phase.
Regarding the death of Pace's grandmother, witnesses at the postconviction evidentiary hearing did not testify that Pace's grandmother's death had any strong effect on Pace. Competent, substantial evidence supports the postconviction court's finding that witness testimony "was not detailed or substantial enough to attribute Pace's extreme behavioral changes to her death." Postconviction order at 21-22. We agree with the postconviction court's denial of relief.

Issue II: Ineffective Assistance of Guilt-Phase Counsel
Pace asserts that his guilt-phase counsel was ineffective for failing to present a voluntary intoxication defense and an insanity defense based on Pace's crack use. The postconviction court's order denying this claim states:
Counsel abandoned this defense for the following reasons: (a) representations by [Pace] that he was not intoxicated at the time of the offense; (b) third party observations of [Pace] around the time of the crime that indicated that he did not appear intoxicated; (c) opinions from two mental health experts that stated the involuntary intoxication defense was not applicable. In addition, [Pace's] confession to the defense investigator indicated a clear recollection of the facts of the offense and involved deliberate behavior, such as secreting the body and taxi as well as driving the taxi. Thus, trial counsel is not deficient for rejecting an intoxication defense that did not appear viable and was unsupported by the evidence.
Postconviction order at 8 (footnote and record citation omitted). The postconviction court's factual findings are supported by competent, substantial evidence in the record. Pace reiterated to guilt-phase counsel on numerous occasions that he was not intoxicated during the commission of the crime. There was also no indication from the experts that Pace was insane at the time of the offense, and guilt-phase counsel testified that he believed Pace was competent. We find no error in the postconviction court's determination that Pace's guilt-phase counsel did not act deficiently by failing to present a voluntary intoxication defense or an insanity defense. Therefore, Pace has failed to demonstrate ineffective assistance of guilt-phase counsel.

Issue III. Brady Claims
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Court later announced the three-prong test a defendant must establish to successfully assert a Brady claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). The question regarding *178 whether prejudice ensued (also referred to as whether the evidence is material) "is whether `the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. at 290, 119 S.Ct. 1936 (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). The standard of review is de novo for the legal question of prejudice while giving deference to the postconviction court's factual findings. See Rogers v. State, 782 So.2d 373, 377 (Fla.2001).
Pace asserts that the State suppressed a fingerprint smudge report and a written reprimand of Investigator Jean Shirah.

A. The Fingerprint Smudge Report
On the second day of Pace's trial, prosecutor Kim Skievaski directed sheriff's officers to conduct an experiment to determine whether a fingerprint on the window of the victim's taxicab would smudge if the window was rolled down and up again. The officers determined in a written report that a fingerprint would not smudge. This report was not provided to Pace's counsel.
The postconviction court held that Pace failed to demonstrate that the withheld smudge report was sufficiently exculpatory. The court cited the following facts to support its conclusion.
At the Defendant's trial, the evidence revealed the existence of one latent print attributable to Pace on the exterior of the driver's side window of Covington's cab. Defense counsel diminished the evidentiary value of this print by eliciting testimony that Pace occasionally worked for Covington and had often ridden in his cab. In addition, the State's expert conceded that there is no scientific method to determine the age of a print and a print can remain on a surface for an indefinite period of time under ideal conditions. Thus, the fingerprint evidence alone failed to establish a sufficient link between the Defendant and the murder of Covington.[n.] Given the weakness of the fingerprint evidence, a report that indicated that a print would not smudge if the window were rolled down is of little significance.
[n.] Examples of more substantial evidence linking Pace to the crime are the following: witnesses placed the Defendant in Covington's cab on the morning of the murder, Pace had possession of the shotgun believed to be the murder weapon, the Defendant had human blood that matched the victim's blood type on his clothing the day of the murder, and witnesses placed the Defendant near the location where the cab was dumped after the murder.
Postconviction order at 25-26 (record citations omitted). The record supports the postconviction court's factual findings, and we approve the postconviction court's denial of this claim. Pace has not demonstrated that the evidence is sufficiently exculpatory or that prejudice ensued. The information provided in the smudge report would have been cumulative to other evidence presented by Pace's counsel, and it was not favorable enough "to put the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435, 115 S.Ct. 1555.

B. Reprimand of Investigator Jean Shirah
Investigator Jean Shirah was a deputy sheriff who testified during Pace's trial. Two months before Pace's trial, Shirah knowingly gave false information under oath during a deposition for an unrelated case. Shirah had testified that she had collected a particular exhibit during a search, when in fact the item had been collected by another officer. The State Attorney's office subsequently reprimanded *179 Shirah, issued her a written reprimand, and notified the Public Defender's office. Pace asserts that the failure to disclose the written reprimand issued to Shirah constitutes a Brady violation.
The postconviction court held that Pace failed to demonstrate that the State suppressed this evidence because the State Attorney's office communicated to Pace's counsel that Shirah gave false testimony, and Pace's counsel testified that he was probably aware that Shirah had been reprimanded. Additionally, the postconviction court held that Pace failed to establish that prejudice ensued. We find no error in the decision that there was no Brady violation. See Stewart v. State, 801 So.2d 59, 70 (Fla.2001).

Issue IV. Prosecutorial Comments on Pace's Silence
Pace alleges that guilt-phase counsel was ineffective for failing to object to and preserve improper prosecutorial comments relating to Pace's silence. Pace alleges that the following prosecutorial comments were improper:
The Defendant never makes one mention of Floyd Covington or about the story that he told to either May Green or Michael Green. And you recall their testimony about whether or not it appeared he had been injured in any way or complained about being injured in any way....
....
He never reported it, not to any law enforcement agency, not to May Green, Michael Green, not to anyone else. He never tells anybody that he was injured, never reports what happened to him or Floyd Covington.
The postconviction court denied this claim, stating:
At [Pace's] trial, Harvey Rich, [Pace's] stepfather, testified that Pace told him the following: Covington had given Pace a ride home on the morning of his disappearance, November 4, 1988; Pace entered the home through an open window and was choked to unconsciousness; Pace regained consciousness in the woods lying next to his brother's shot gun and Covington's car; he picked up the gun and left the scene after noticing blood in the car. During closing argument, [trial counsel] asserted that the State had not presented any evidence to disprove Pace's declaration of innocence to Rich.
The prosecutor's comments were a fair response to defense counsel's assertions as well as a permissible comment on the evidence. Viewing the comments in context, the prosecutor was not commenting on Pace's failure to testify but on the reasonableness of the statement [Pace] made to Rich in light of his prearrest behavior. The prosecutor was simply attempting to direct the jury's attention to the testimony and evidence presented that were inconsistent with his declaration of innocence to Rich. See generally Barwick v. State, 660 So.2d 685, 694 (Fla.1995). In addition, the behavior that the prosecutor is referring to deals with actions by [Pace] before he was advised of his right to remain silent. Therefore, trial counsel is not ineffective for failing to object to comments that were not fairly susceptible of being interpreted as comments on Pace's right to remain silent.
Postconviction order at 6-7 (record citations omitted). We find no error in the postconviction court's denial of this claim. Pace's ineffective assistance claim is based on portions of the prosecutor's arguments that were taken out of context. The prosecutor was not commenting on Pace's failure to testify but was rather commenting on the inconsistencies in the hypothesis of innocence that Pace presented at trial. *180 Pace has failed to demonstrate ineffective assistance of guilt-phase counsel for the failure to object to these prosecutorial comments.

Issue V. Ring v. Arizona

Pace raises this identical claim in his petition for writ of habeas corpus, and we will address the claim in our discussion of Pace's habeas petition.

Issue VI. Access to Public Records
Pace filed numerous public records requests, including requests to the Santa Rosa County Sheriff's Department, the Milton Police Department, the Florida Department of Law Enforcement, and the First Judicial Circuit State Attorney's office. The postconviction court denied these requests, finding that the public records stage of Pace's case had ended. Pace raised a claim with the postconviction court in his rule 3.850 motion, alleging that certain state agencies failed to provide public records. The postconviction court detailed the history of the public records requests and then denied an evidentiary hearing on Pace's claim. The postconviction court concluded, "The Court has attempted through every means available to bring some finality to Defendant's request for public records disclosure." State v. Pace, No. 88-CF-689 order at 3 (Fla. 1st Cir. Ct. order filed Dec. 15, 1998).
Pace subsequently filed similar public records requests on December 28, 1998. He made no complaint and filed no motion to compel with the postconviction court regarding these requests. In Vining v. State, 827 So.2d 201, 219 (Fla.2002), this Court stated:
Although Vining now contends that there are many public records outstanding, he made no further complaint on the public records issue during the five-month span between the postconviction court's public records order and the evidentiary hearing. Based on this record, we conclude that the court afforded Vining ample time and opportunity to pursue any public records claim. Through his own actions, Vining either waived or abandoned any claim that he was denied public records.
Due to Pace's inaction during the year and a half between his public records request and the evidentiary hearing, we conclude that Pace has waived or abandoned any claim that he was denied public records. See id.

PETITION FOR WRIT OF HABEAS CORPUS
Pace's petition for a writ of habeas corpus asserts the following: (1) appellate counsel was ineffective for failing to argue that the cold, calculated, and premeditated (CCP) instruction was unconstitutionally vague; (2) appellate counsel was ineffective for failing to argue that the trial court committed fundamental error by instructing the jury on the avoid arrest aggravator; (3) Ring v. Arizona renders Florida's capital sentencing scheme unconstitutional; (4) appellate counsel was ineffective for failing to challenge the trial court's admission of a pair of pants into evidence; and (5) this Court erred by affirming Pace's death sentence without assessing proportionality.

Habeas Issue I. CCP Instruction
Pace asserts that his appellate counsel was ineffective for failing to raise on direct appeal the claim that the CCP instruction given during Pace's penalty phase was unconstitutionally vague. The instruction given was identical to that found unconstitutional in Jackson v. State, 648 So.2d 85, 89-90 (Fla.1994). When evaluating a claim of ineffective assistance of appellate counsel raised in a petition for writ of habeas corpus, this Court must determine *181 first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000).
Pace's appellate counsel was not ineffective for failing to challenge the CCP instruction. Pace's trial counsel did not object to the CCP instruction on the ground that the wording of the statute was unconstitutionally vague. Therefore, this claim was not preserved for appeal. In the absence of fundamental error, an appellate attorney has no obligation to raise an issue that was not preserved for review. See Rutherford v. Moore, 774 So.2d 637, 646 (Fla.2000). Pace does not assert that the erroneous CCP instruction constituted fundamental error, and this Court has held that claims of error based on this Court's decision in Jackson are procedurally barred unless "[t]he objection at trial [attacks] the instruction itself, either by submitting a limiting instruction or making an objection to the instruction as worded." Pope v. State, 702 So.2d 221, 223-24 (Fla. 1997). Additionally, appellate counsel cannot be considered ineffective for failing to challenge a jury instruction on the basis of decisions that had not yet been decided. Cf. Downs v. State, 740 So.2d 506, 518 (Fla.1999).

Habeas Issue II. Avoid Arrest Aggravator Instruction
Pace asserts that appellate counsel was ineffective for failing to raise the fundamental error of allowing the avoid-arrest aggravator to be presented to the jury. However, the trial court did not commit error, much less fundamental error. "The fact that the state did not prove this aggravator to the trial court's satisfaction does not require a conclusion that there was insufficient evidence ... to allow the jury to consider the factor." Bowden v. State, 588 So.2d 225, 231 (Fla.1991). Appellate counsel was not ineffective for failing to raise this issue.

Habeas Issue III. Ring v. Arizona

Pace asserts that Florida's capital sentencing statute and his death sentence are unconstitutional in light of the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We have denied relief for postconviction claims based upon this argument. See Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002); King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). We likewise deny Pace's claim.

Habeas Issue IV. Failure to Challenge Admission of Evidence
Pace next asserts that appellate counsel was ineffective for failing to assert on direct appeal that the trial court erred by improperly admitting a pair of pants, which allegedly belong to Pace, with spots of blood on them. Pace's trial counsel objected on several occasions that the State failed to sufficiently demonstrate that the pants belonged to Pace. Although Pace's appellate counsel did not raise the issue on appeal, Pace has failed to demonstrate that his appellate counsel performed deficiently by not raising this issue. In *182 Garcia v. State, 564 So.2d 124 (Fla.1990), this Court stated:
Evidence is authenticated when prima facie evidence is introduced to prove that the proffered evidence is authentic. The finding of authenticity does not mean that the trial judge makes a finding that the proffered evidence is genuine. He only determines whether prima facie evidence of its genuineness exists. Once the matter has been admitted the opposing party may challenge its genuineness. The jury then determines as a matter of fact whether the proffered evidence is genuine.
Id. at 126 (quoting Charles W. Ehrhardt, Florida Evidence § 901.1, at 570-71 (2d ed.1984)).
There was prima facie evidence presented during Pace's guilt phase to sufficiently authenticate that the pants belonged to Pace. The pants were found in Pace's bedroom, and one witness identified the pants as the pair that Pace was wearing the day after the murder. Other witnesses testified that, although they could not conclusively identify the pants, the pants looked like a pair that Pace owned. Additionally, witnesses testified that the pair of pants Pace was wearing after the murder had blood stains on them that were essentially identical to the blood stains on the pants admitted into evidence. Counsel cannot be deemed ineffective for failing to raise a meritless issue. See Rutherford, 774 So.2d at 646.

Habeas Issue V. This Court's Proportionality Review
Pace contends that this Court failed to assess the proportionality of Pace's sentence in his direct appeal. This claim is without merit. In affirming Pace's death sentence, this Court held that "death is the appropriate penalty. Accord Eutzy v. State, 458 So.2d 755 (Fla.1984); Johnson v. State, 438 So.2d 774 (Fla.1983)." Pace, 596 So.2d at 1036 (denial of certiorari citations omitted). In both Eutzy and Johnson, this Court upheld death sentences for defendants who had been convicted of murdering taxicab drivers.

CONCLUSION
Accordingly, we affirm the postconviction court's denial of Pace's rule 3.850 motion and deny Pace's petition for writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE and CANTERO, JJ., and SHAW, Senior Justice, concur.
ANSTEAD, C.J., concurs specially with an opinion.
ANSTEAD, C.J., specially concurring.
I concur with the majority opinion in all respects, except for its discussion of the Ring issue.
NOTES
[1] On direct appeal, Pace asserted: (1) the trial court erred by admitting into evidence statements Pace made to his stepfather; (2) the trial court erred by limiting defense cross-examination about an alleged third shotgun shell; (3) the trial court erred by allowing into evidence Pace's statement, made the day before the murder, that he would do something "tomorrow" to make money; (4) the trial court erred by allowing into evidence the two shotgun shells found in Pace's yard; (5) the trial court erred by denying Pace's motion for judgment of acquittal; (6) the trial court erred by failing to find any nonstatutory mitigating circumstances; and (7) Pace's death sentence was disproportionate.
[2] Pace's rule 3.850 motion asserted: (1) state agencies failed to provide public records; (2) a four-part claim alleging that (a) counsel was ineffective at the guilt phase, (b) the State suppressed exculpatory evidence (a fingerprint smudge report and a written reprimand of State investigator Jean Shirah), (c) there was newly discovered evidence of innocence, and (d) there were erroneous evidentiary rulings at trial; (3) a "shell" claim of newly discovered evidence of innocence; (4) counsel was ineffective at the penalty phase; (5) the trial court erred by failing to excuse certain prospective jurors for cause; (6) the jury venire did not represent a fair cross section of the community; (7) Pace's shotgun was illegally seized by police; (8) the defense cross-examination about a third shotgun shell was erroneously limited; (9) the evidence was insufficient to support Pace's robbery conviction; (10) the prosecutor, in closing argument at the guilt phase, improperly commented on defendant's silence; (11) and (12) there were improper arguments by the prosecutor at the penalty phase; (13) the murder-committed-during-a-felony aggravator is unconstitutional; (14) the avoid-arrest instruction was erroneous; (15) the cold, calculated, and premeditated (CCP) instruction was unconstitutional; (16) the prior-violent-felony aggravator was invalid because Pace's prior conviction was invalid; (17) the penalty-phase jury instructions were burden-shifting; (18) the pecuniary-gain aggravator was improper; (19) there was improper evidence and argument on nonstatutory aggravating factors; (20) the rules precluding juror interviews were unconstitutional; and (21) electrocution is a cruel or unusual punishment.
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[5] Postconviction counsel provided Dr. Larson and Dr. Szmurlo with recent affidavits from Pace's friends and family, the presentence investigation report for Pace's strong arm robbery, and Pace's juvenile records. Drs. Szmurlo and Larson both testified at the evidentiary hearing that they believed, after reviewing the information provided by postconviction counsel, that Pace was suffering from an extreme mental or emotional disturbance and was unable to conform his conduct to the requirements of the law during the commission of the offense.