942 So.2d 874 (2006)
William REAVES, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-891.
Supreme Court of Florida.
September 14, 2006.
Rehearing Denied November 2, 2006.
*875 Neal A. Dupree, Capital Collateral Regional CounselSouthern Region, William M. Hennis, III, Litigation Director, CCRC, Fort Lauderdale, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Debra Rescigno, and *876 Leslie Campbell, Assistant Attorneys General, West Palm Beach, FL, for Appellee.
PER CURIAM.
William Reaves, a prisoner under sentence of death, appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the trial court's denial of relief.

FACTUAL AND PROCEDURAL HISTORY
Reaves was convicted and sentenced to death for the murder of Deputy Richard Raczkowski of the Indian River Sheriff's Department. On direct appeal we summarized the facts of the case as follows:
In the early morning hours of September 23, 1986, Deputy Richard Raczkowski of the Indian River Sheriff's Department was dispatched by the 911 operator to a convenience store in response to a call from the store's pay telephone. According to Reaves' confession, when the deputy arrived at the store he spoke to Reaves who explained he had made the 911 call because he had no money to call a taxi cab. The deputy then called the 911 operator and requested a cab be sent to the store.
In his confession Reaves stated that while he and the deputy awaited the cab, a gun fell from the shorts Reaves was wearing. When Reaves tried to pick up the gun, the deputy prevented him from doing so by stepping on his hand. Reaves pushed the deputy's knee and then grabbed him by the throat. Reaves eventually got the gun and declared he would not give it to the deputy. The deputy backed away before turning to run. Reaves then shot the deputy in the back four times, claiming he was frightened because he had been using cocaine and because the deputy had reached for his own gun.
It was later determined that the deputy's gun in fact had been fired three times.
After the shooting Reaves went to the home of a friend named Hinton. According to Hinton, Reaves said he was able to retrieve the gun after pushing the deputy in the throat. Reaves pointed the gun in the deputy's face as the deputy attempted to draw his own weapon and stated, "I wouldn't do that if I were you." The deputy began backing away, turned, and ran. Reaves then shot him as he ran away.
Reaves v. State, 574 So.2d 105, 106 (Fla. 1991).
This Court reversed the judgment and sentence and remanded the case for a new trial. See id. at 107-108. This Court held where the prosecuting attorney had previously represented Reaves in a grand larceny case as a public defender and had actual access to privileged defense-related information, the trial court erred in denying the properly filed motion to disqualify the prosecutor filed before trial. Id.
On direct appeal after the retrial in 1992, this Court summarized the following additional facts:
Witness Whitaker, who discovered the deputy, testified he saw a black man wearing red shorts and a white T-shirt running from the scene in a manner similar to men in Vietnam under fire. (William Reaves served in Vietnam.) Witness Hinton was ruled unavailable to testify, [pursuant to] section 90.804(1)(b), Florida Statutes (1991), and his testimony from the 1987 trial was read into the record. . . . [Hinton testified that he] had no trouble understanding Reaves; his speech was not slurred *877 and he appeared to be in full control of his faculties.
Reaves v. State, 639 So.2d 1, 3 (Fla.1994). The jury convicted Reaves of premeditated first-degree murder and recommended death by a vote of ten to two. The trial court found three aggravating circumstances (prior violent felony conviction, avoid arrest, and murder was especially heinous, atrocious, or cruel). Although no statutory mitigating circumstances were found, the trial court found three nonstatutory mitigating circumstances (honorable military discharge, good reputation in the community up to the age of sixteen, and he was a good family member). Id. at 3 & nn. 2-3.
On direct appeal, Reaves raised twelve issues concerning the guilt phase and four issues concerning the penalty phase of the trial. In particular, Reaves asserted that several statements by witness Hinton, under oath, prior to Hinton's 1987 trial testimony were inconsistent with his 1987 trial testimony and should have been admitted pursuant to section 90.806, Florida Statutes (1991). 639 So.2d at 3. In affirming the conviction and sentence, this Court rejected all of Reaves' claims on the guilt and penalty phase issues. This Court held while it "agree[d] that Hinton's prior inconsistent testimony should have been admitted," it found the trial court's exclusion harmless error. Reaves, 639 So.2d at 4.
Reaves filed a petition for writ of certiorari to the United States Supreme Court which was denied. See Reaves v. Florida, 513 U.S. 990, 115 S.Ct. 488, 130 L.Ed.2d 400 (1994). Reaves filed an initial motion to vacate judgment and sentence pursuant to Florida Rule of Criminal Procedure 3.851 in February 1995. The motion was amended in February 1999. After a Huff[1] hearing on May 28, 1999, the trial court entered an order on February 9, 2000, summarily denying the motion for postconviction relief without an evidentiary hearing. Reaves' motion for rehearing was denied on March 14, 2000.
Reaves appealed to this Court and raised fourteen issues. While we found several of those claims were procedurally barred, insufficiently pled or premature, we concluded that the trial court erred in summarily denying Reaves' claim of ineffectiveness of trial counsel, Jay Kirschner. See Reaves v. State, 826 So.2d 932, 936 (Fla.2002). The case was remanded to the trial court for an evidentiary hearing on the claims relating to whether counsel was ineffective for failing to raise a voluntary intoxication defense and related subclaims. See id. at 944.
An evidentiary hearing was held on March 4-6, 2003. While awaiting the trial court's decision on the pending motion, Reaves filed a successive 3.851 motion based on Ring[2] on June 24, 2003. Reaves also supplemented his 3.851 motion on December 10, 2003, by notifying the court of his eligibility to receive veteran's benefits based on a finding of 100% disability due to Post-Traumatic Stress Disorder (PTSD). On March 10, 2004, the trial court denied both the amended motion for postconviction relief and the successive motion for postconviction relief. After denying the motion for rehearing, the trial court signed final orders denying both motions on April 20, 2004.
In this appeal Reaves raises two issues: (1) whether the trial court erred in denying a new trial where it was demonstrated that trial counsel was deficient in failing to investigate, prepare or present a voluntary intoxication defense; and (2) whether the *878 trial court erred in excluding the testimony of Eugene Hinton from the evidentiary hearing and in denying forensic testing of evidence for drug metabolites. For the reasons expressed herein, we affirm the trial court's order denying Reaves' motion for postconviction relief.

DISCUSSION

Failure to Present Voluntary Intoxication Defense
Reaves argues that trial counsel rendered ineffective assistance on retrial by failing to investigate, prepare, and present a voluntary intoxication defense. Reaves maintains he was prejudiced by counsel's failure to present this defense because there was ample evidence to show he was intoxicated and could not have formed the specific intent for murder. Conversely, the State argues that Reaves failed to demonstrate that counsel was deficient for failing to present a voluntary intoxication defense. The State argues Reaves failed to present any additional testimony regarding his level of intoxication at the time of the offense. The State maintains there is substantial, competent evidence supporting the trial court's finding that Reaves failed to meet this burden. Based upon the record at retrial, the facts of the case, the law in Florida at the time, and counsel's experience and knowledge of the case, we agree that counsel rendered reasonably effective representation.
When considering claims of ineffective assistance of counsel, this Court applies the following standard:
An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness."
Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The prejudice prong of the analysis "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Failing to establish either prong results in a denial of the claim. Ferrell v. State, 918 So.2d 163, 170 (Fla.2005). For ineffective assistance of counsel claims raised in postconviction proceedings, the appellate court affords deference to findings of fact based on competent, substantial evidence and independently reviews deficiency and prejudice as mixed questions of law and fact. See Freeman v. State, 858 So.2d 319, 323 (Fla. 2003); State v. Riechmann, 777 So.2d 342 (Fla.2000). On an ineffective assistance of counsel claim the standard is not how present counsel would have proceeded in hindsight. See Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995). On review, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Rolling v. State, 825 So.2d 293, 298 (Fla.2002) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052).
This Court has held it will not second-guess counsel's strategic decisions about whether to pursue an intoxication defense. See Jones v. State, 855 So.2d 611, 616-617 (Fla.2003); Johnson v. State, 769 So.2d 990, 1001-02 (Fla.2000); Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000).[3] *879 Furthermore, we have said that counsel's decision not to pursue a voluntary intoxication defense was not ineffective assistance where no evidence was presented that defendant was intoxicated at the time of the crime although there has been a history of drug abuse. See Dufour v. State, 905 So.2d 42, 53 (Fla.2005); Pietri v. State, 885 So.2d 245, 253 (Fla.2004); Henry v. State, 862 So.2d 679, 683 (Fla.2003).[4]
Reaves has failed to show how counsel's performance at retrial was deficient, i.e., that he did not function as `counsel' guaranteed by the Sixth Amendment. In order to assert the defense of voluntary intoxication, Reaves must present evidence of intoxication at the time of the offense that would show his inability to form the requisite specific intent. See Rivera v. State, 717 So.2d 477, 485 (Fla.1998); Linehan v. State, 476 So.2d 1262, 1264 (Fla. 1985). Reaves did not present any evidence at the evidentiary hearing to show his level or state of intoxication at the time of the murder. There was no evidence to corroborate Reaves' assertions that he was "high" at the time of the offense. Importantly, although the mental health experts opined at the evidentiary hearing that Reaves was intoxicated, they did not have any objective evidence to support their conclusions.
Other than his own statements during his confession, there is no direct evidence that Reaves was intoxicated at the time of the offense. During his confession, Reaves said he was "high" at the time he shot Deputy Raczkowski, but he also made statements indicating he knew exactly what he was doing at the time of the shooting. These statements essentially negated any voluntary intoxication defense that trial counsel could have presented on Reaves' behalf on retrial. See Pace v. State, 854 So.2d 167, 177 (Fla.2003) (finding counsel's rejection of an intoxication defense was not deficient performance where Pace's confession "indicated a clear recollection of the facts of the offense and involved deliberate behavior"); Davis v. State, 875 So.2d 359, 367 (Fla.2003) (finding competent, substantive evidence supported trial court's determination that counsel made an informed, strategic decision not to pursue an intoxication defense where defendant gave detailed confessions as to the circumstances of the crime that "substantially undermined the viability of a voluntary intoxication defense"); Damren v. State, 838 So.2d 512, 517-18 (Fla.2003) (holding counsel's strategic decision not to present a voluntary intoxication defense did not constitute ineffective assistance of counsel where counsel determined the *880 murder was not committed while Floyd was under the influence of cocaine).
Furthermore, Hinton, the first person to see Reaves after the shooting, testified at the 1987 trial that Reaves came to his house and said he had shot a cop. Reaves told him the officer begged Reaves not to shoot him but Reaves said, in essence, "One of us has to go." Hinton also testified that Reaves' speech was not slurred and he appeared to be in full control of his faculties. Because Hinton made himself unavailable to testify at retrial, this testimony was read into the record and further negated the use of a voluntary intoxication defense.
Trial counsel Kirschner testified at the evidentiary hearing that his theory of defense at the time of retrial in 1992 was excusable homicide, which was based on his investigation of the case. He recalled discussing available defenses with Reaves and discussing Reaves' cocaine use around the time of the incident. Kirschner testified he would look for lab reports, lay observations of how defendant was behaving, and toxicology reports to determine whether there was sufficient evidence to argue the defense of voluntary intoxication. Kirschner stated his thought process led him to believe that excusable homicide was "the right fit for the defense in this case," and based on the record, the trial court found his strategic decisions were competent.
In its order denying relief, the trial court found the ability to offer evidence of the combined effect of intoxication and a mental defect was not fully articulated or established in law until State v. Bias, 653 So.2d 380 (Fla.1995), which was issued three years after the retrial. Thus, the trial court found no error in the court's reliance during the retrial on Chestnut v. State, 538 So.2d 820 (Fla.1989), to deny trial counsel's request to present Dr. William Weitz's mental health testimony at the guilt phase. In Chestnut, this Court held that an abnormal mental condition not constituting legal insanity was inadmissible for the purpose of proving that an accused did not or could not form the specific intent to commit an offense. See Chestnut, 538 So.2d at 820. Dr. Weitz diagnosed Reaves as having an antisocial personality disorder,[5] polysubstance abuse (particularly cocaine), and Vietnam Syndrome.[6] This diagnosis did not rise to the level of legal insanity, and trial counsel would have known that it could not support a voluntary intoxication defense at the time.
Furthermore, during the proffer of Dr. Weitz's testimony during the guilt phase, he revealed that Reaves' consumption of cocaine and beer did not raise his level of intoxication to a point that would prevent Reaves from knowing right from wrong. Dr. Weitz further testified that Reaves knew to flee the area, hide in the woods, and take evasive action, all of which indicated Reaves knew what he was doing.
There is competent, substantial evidence in the record supporting the trial court's conclusion that trial counsel provided reasonably effective assistance of counsel. Without the distorting effect of hindsight, *881 trial counsel's strategic choice of excusable homicide as a defense over involuntary intoxication was reasonable under the facts of the case and the law at the time. Thus, Reaves has not demonstrated that trial counsel's performance was deficient under Strickland. Because counsel's performance was not deficient, we need not address the prejudice prong. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052.

Exclusion of Hinton's Live Testimony/Denial of Forensic Testing
Prior to the evidentiary hearing, Reaves filed a motion for a writ of habeas corpus ad testificandum[7] seeking to have Hinton appear and testify. The motion was denied, but the trial court allowed Hinton's affidavit to be used and argued. Reaves argues the trial court erred in excluding Hinton's live testimony at the evidentiary hearing because the testimony was relevant and material to the claim of ineffective assistance of counsel. Reaves also argues the trial court erred in denying his motion for forensic testing of some of the evidence for drug metabolites because the testing would provide scientific support to bolster the claim of intoxication at the time of the offense. Conversely, the State argues that the trial court did not abuse its discretion in not allowing Hinton to testify in light of his prior testimony and deposition. The State also contends the trial court did not err in denying the motion for forensic testing because Reaves failed to show how the testing would reveal his level of intoxication at the time of the offense. In light of Hinton's testimony at the 1987 trial and the fact that he would not testify at retrial in 1992, we agree the trial court did not abuse its discretion in not allowing Hinton to testify at the evidentiary hearing. Furthermore, denial of the motion for forensic testing was proper because the testing could not reveal Reaves' level of intoxication at the time of the offense.
The standard of review for a trial court's ruling on a motion for writ of habeas corpus ad testificandum is abuse of discretion. See Moody v. State, 418 So.2d 989, 992 (Fla.1982). The abuse of discretion standard of review also applies to the denial of a motion for discovery in a postconviction case. See State v. Lewis, 656 So.2d 1248, 1250 (Fla.1994). Reaves has failed to demonstrate an abuse of discretion by the trial court on either of these issues.
Hinton was physically present as a witness for the State but refused to testify at the 1992 retrial and was ruled unavailable to testify pursuant to section 90.804(1)(b), Florida Statutes (1991). See Reaves v. State, 639 So.2d 1, 3 (Fla.1994). Thereafter, Hinton's testimony from the 1987 trial was read into the record. Id. Hinton's testimony revealed that when Reaves showed up at his home and told him about the incident he "had no trouble understanding Reaves; his speech was not slurred and he appeared to be in full control of his faculties." Id.
Reaves sought to have Hinton testify at the evidentiary hearing in regards to Hinton's 1999 affidavit wherein he described Reaves as "all strung out, he had been smoking crack and pretty much out of his head." The affidavit was created seven years after Hinton refused to testify at the retrial and is significantly different from his 1987 trial testimony. The issue before the trial court at the evidentiary hearing was, however, ineffectiveness of counsel at retrial in 1992. Trial counsel had reviewed *882 the statements Hinton made prior to the 1987 trial, and he had reviewed Hinton's 1987 trial testimony as well. Hinton's account at the time was that he had no trouble understanding Reaves; Reaves' speech was not slurred, and Reaves seemed to be in control of his faculties. At retrial that was the only information, other than Reaves' statements, available to counsel in regards to Reaves' level of intoxication at the time of the murder. Hinton made himself unavailable to testify at the retrial, and his previous trial testimony in 1987 did not indicate that Reaves was intoxicated when Hinton saw him after the murder. The trial court properly found that the affidavit contained the sum and substance of any testimony that would have been procured from Hinton if he had testified at the evidentiary hearing. That testimony in effect was irrelevant to the ineffectiveness of counsel issue because the information now being posited by Hinton was not available to counsel in 1992.
Furthermore, the trial court did not err in denying the motion for testing for drug metabolites. Reaves failed to show how the additional testing would reveal material evidence to show his level of intoxication at the time of the crime. At the hearing, Reaves' own expert, Dr. Debra Mash, testified that, at most, testing could reveal the presence of drugs. However, testing could not reveal the actual time the drugs were taken or in what amount. Therefore, any drugs, drug paraphernalia, hair sample, or clothing seized could not provide competent evidence relating to Reaves' level of intoxication at the time of the crime.
In light of these circumstances, the trial court did not abuse its discretion in denying Reaves' request to have Hinton testify at the evidentiary hearing and did not abuse its discretion in denying his request to have items tested for the presence of drug metabolites.

CONCLUSION
For the reasons stated, we affirm the trial court's order denying Reaves' motion for postconviction relief after an evidentiary hearing.
It is so ordered.
LEWIS, C.J., WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurring in part and dissenting in part.
I cannot concur in the majority's approval of the conduct of counsel in failing to properly investigate or present an intoxication defense to explain Reaves' bizarre conduct that ultimately resulted in the death of a police officer when he responded to defendant's emergency 911 call for help. Unfortunately, the record is as devoid of an explanation for counsel's failure to investigate and assert this defense as it was when we reversed and remanded for an evidentiary hearing in our earlier review of the summary denial of the claim. All that has been added to the record is more evidence, expert and otherwise, of the defendant's cocaine addiction and intoxication at the time of the offense.
In an earlier remand we described this claim and its setting:
In Reaves' first subclaim, he asserts that he is entitled to an evidentiary hearing regarding whether trial counsel was ineffective in failing to present a voluntary intoxication defense. The record shows that during the guilt phase, the State introduced Reaves' confessionevidence which could have supported a voluntary intoxication defense *883 since Reaves claimed to be "coked up" when he fired the gun. Defense counsel, however, never argued this defense or presented any evidence which supported voluntary intoxication despite the fact that there was other evidence which could have supported this theory. During the jury charge conference, the trial judge noted that during Reaves' first trial, the jury was informed as to this defense, and it was decided that such a jury instruction should be given again. Notwithstanding this fact, Reaves' counsel never mentioned voluntary intoxication during closing arguments, and never discussed how the evidence could have supported this theory or how cocaine affects the user. During the penalty phase, even more evidence was presented which would have supported a voluntary intoxication defense, including additional testimony that Reaves was on drugs at the time of the crime. Moreover, numerous witnesses testified that Reaves had a history of serious drug abuse dating back to the Vietnam War, that he became involved in "heavy drugs" towards the end of his service in Vietnam, and that his prior convictions were drug-related.
. . . .
The postconviction court denied Reaves' allegation without an evidentiary hearing despite evidence that his counsel had evidence supporting this defense which he did not present. Specifically, the judge found that voluntary intoxication was not an available defense since the defendant's expert witness testified during a proffer that Reaves was not so intoxicated that he did not know right from wrong. This reasoning obscures the difference between an insanity defense and a voluntary intoxication defense. Insanity is a complete defense if, at the time of the crime, the defendant was incapable of distinguishing between right and wrong as a result of a mental disease or defect. [N.8] Voluntary intoxication is a separate theory and is available to negate specific intent, such as the element of premeditation essential in first-degree murder. [N.9] In order to successfully assert the defense of voluntary intoxication, "the defendant must come forward with evidence of intoxication at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged." Rivera v. State, 717 So.2d 477, 485 n. 12 (Fla. 1998) (quoting Linehan v. State, 476 So.2d 1262, 1264 (Fla.1985)). Voluntary intoxication was an available defense in this instance, and the record is inconclusive as to why counsel did not advance the defense. As Reaves' claim of ineffective assistance was legally sufficient and was not refuted by the record, it was error not to afford him an evidentiary hearing on this issue.
N.8. Nowitzke v. State, 572 So.2d 1346, 1355 n. 5 (Fla.1990) ("Florida follows the M'Naghten Rule, which states that any expert testimony . . . to be relevant, must concern whether [the defendant] (1) was incapable of distinguishing right from wrong (2) as a result of mental infirmity, disease, or defect.") (internal quotation marks omitted); Hall v. State, 568 So.2d 882, 885 (Fla.1990) ("[A]n accused is not criminally responsible if, at the time of the alleged crime, the defendant was by reason of mental infirmity, disease, or defect unable to understand the nature and quality of his act or its consequences or was incapable of distinguishing right from wrong.").
N.9. Gardner v. State, 480 So.2d 91, 92 (Fla.1985) ("Voluntary intoxication is a defense to the specific intent crimes of first-degree murder and *884 robbery."); Burch v. State, 478 So.2d 1050, 1051 (Fla.1985) ("We explicitly recognized [in Cirack v. State, 201 So.2d 706 (Fla.1967),] that the defense of voluntary intoxication was available to negate specific intent. . . . ").
Reaves v. State, 826 So.2d at 937-39. At the evidentiary hearing, defense counsel testified that he believed there was a basis for the voluntary intoxication defense but he viewed it as a secondary or fall-back defense that he would leave completely to the jury to figure out without his assistance. This was essentially his only explanation for not investigating or presenting the defense, and this explanation is patently unreasonable and inadequate in light of the facts and circumstances we outlined in our remand opinion and the additional facts and circumstances developed at the postconviction hearing.
Try as I may, I cannot conclude, as the majority has done, that this testimony represents a reasonable and adequate investigation by counsel of the circumstances that would support this defense. As we have noted in our past opinions, this case involves tragic and bizarre circumstances that included the defendant calling 911 at 3 a.m. from a Zippy Mart apparently in an effort to get a taxicab. When a police officer responded to this call for help, he was killed as a result of a struggle over a gun that fell out of Reaves' clothing. Reaves' confession was replete with statements that he was high on cocaine at the time. Reaves was also seen by a mental health expert who, while acknowledging that Reaves knew right from wrong, was prepared to testify on the voluntary intoxication defense. Because even more evidence of appellant's cocaine addiction was presented in the postconviction hearing, and defense counsel provided no reasonable explanation for his failure to investigate and present this defense, I cannot join in the majority's conclusion that counsel provided competent representation.
In the face of a lack of an adequate explanation of counsel, the trial court and the majority have fashioned a speculative and hypothetical explanation by pointing out possible weaknesses in the defense of voluntary intoxication. But that is neither the trial court's nor our obligation on review of counsel's actions. Rather, we are bound by the facts, most of which are outlined in our prior opinion, and by counsel's explanations, not our own speculation or rationalization of counsel's conduct.
As this Court explicitly detailed in our prior opinion, on this record, with its bizarre facts, voluntary intoxication jumps out as an explanation for the defendant's bizarre and deadly actions. And, while even that defense could not have exonerated the defendant from responsibility for the death of the officer, it could have resulted in a jury finding of guilt of a lesser degree of homicide. In a very real sense, the advancement of this defense represented a chance to save the appellant's life. It is simply not enough for counsel, as he admitted below, to leave it to the jury to figure out such an important defense on its own.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla.1993).
[2] Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[3] In these cases this Court held that strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.
[4] In Dufour this Court found no ineffectiveness where trial counsel made an informed and reasoned decision not to pursue a voluntary intoxication defense, which was inconsistent with the underlying defense theory of the case. Moreover, Dufour failed to establish that the defense was viable because he could not demonstrate that he was actually intoxicated at the time of the offense. See Dufour, 905 So.2d at 53.

In Pietri this Court found no ineffectiveness where Pietri did not present evidence at the postconviction evidentiary hearing to demonstrate that he was in fact intoxicated at the time of the offense. Furthermore, Pietri did not present any competent evidence proving his inability to form the specific intent to commit the crime. See Pietri, 885 So.2d at 253.
In Henry this Court found no ineffectiveness where Henry failed to present any evidence that he was actually intoxicated at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged. See Henry, 862 So.2d at 683.
[5] Dr. Weitz defined antisocial personality disorder as having difficulty relating to authority figures. Anger, irritability, and rage are components of this disorder.
[6] Vietnam Syndrome is defined as a series or a set of personality characteristics and behavioral patterns of changes that have occurred in combat veterans as a result of combat experience. The qualities of the syndrome include rage reactions, alienation, and isolation from the social environment, hypervigilant type alertness known as "startle response," a potential increase in alcohol and drug use, and some depression.
[7] A motion for writ of habeas corpus ad testificandum is defined in Black's Law Dictionary 728 (8th ed.2004), as a writ used in civil and criminal cases to bring a prisoner to court to testify.