[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11225
_____

D.C. Docket No. 2:10-cv-14046-DMM

WILLIAM REAVES,

Petitioner-Appellee,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 28, 2017)

Before ED CARNES, Chief Judge, TJOFLAT and MARCUS, Circuit Judges.

ED CARNES, Chief Judge:

William Reaves, a Florida prisoner who has been sentenced to death for the

murder of a police officer, sought in the Florida courts habeas relief from his

conviction and sentence.  When he appealed the summary denial of one of his state post-conviction motions, the Florida Supreme Court held that one claim was moot and remanded another claim for an evidentiary hearing.  It affirmed on the merits the denial of all of the other claims that Reaves had appealed, including a claim that trial counsel had rendered ineffective assistance at the penalty stage by not developing and presenting certain mitigating circumstances evidence.  Reaves v. State, 826 So. 2d 932, 941–44 (Fla. 2002).  It also affirmed the state trial court's rejection of the penalty stage ineffectiveness claim because "the proposed mitigation evidence was either irrelevant, cumulative of evidence already presented at sentencing, or would not have affected the balance of aggravating and mitigating circumstances."  See Reaves v. Sec'y, Fla. Dep't of Corr., 717 F.3d 886, 893 (11th Cir. 2013) (explaining that was the basis of the Florida Supreme Court's rejection of the claim).

The one claim that was not finally disposed of by the Florida Supreme Court's 2002 decision was a guilt stage ineffective assistance claim involving the failure of trial counsel to pursue a voluntary intoxication defense.  Reaves, 826 So. 2d at 937–39, 944.  The court remanded the case to the trial court for it to conduct an evidentiary hearing on that guilt stage claim.  Id. at 944; see Reaves, 717 F.3d at 893–94 (explaining that the Florida Supreme Court "conclude[d] that an evidentiary hearing was needed to resolve Reaves' claim that counsel was

2

ineffective in failing to present a voluntary intoxication defense during the guilt phase of the trial, and it remanded the case for that purpose").

At the evidentiary hearing in the state trial court on remand, Reaves presented evidence that was relevant to the guilt stage ineffectiveness claim involving the voluntary intoxication defense, which was the reason the case was there. He argued to the state trial court that in view of the evidence that he had presented on that claim at the evidentiary hearing he was entitled to relief from the murder conviction. Even though some of the evidence that he presented in support of that guilt stage claim was also relevant to the penalty stage ineffective assistance claim about mitigating circumstances, Reaves did not attempt to re-assert that penalty stage claim during the remand proceedings, nor did he argue that it or any other claim in his Rule 3.850 motion entitled him to relief from his sentence. (Of course, having his conviction set aside on the guilt stage claim he pursued would automatically overturn his death sentence.)

After the evidentiary hearing on remand, the state trial court again ruled that Reaves was not entitled to relief on his guilt stage ineffective assistance claim relating to the voluntary intoxication defense and reiterated its denial of his Rule 3.850 motion.[1] The trial court on remand did not revisit the penalty stage

---

[1] The remanded claim was based on counsel's failure to raise a voluntary intoxication defense and his failure to retain experts to testify in support of that guilt stage defense. After considering the evidence Reaves had presented at the hearing on remand, the trial court ruled:

3

ineffective assistance of counsel claim involving mitigating circumstances nor mention that claim or any sentence stage claim.  Reaves appealed again.

In his second, or post-remand, appeal from the denial of state collateral relief, Reaves did not re-assert or re-argue the penalty stage ineffective assistance claim that the Florida Supreme Court had rejected on the merits in the first appeal. Instead, as he had in the remand proceeding in the trial court, the only claim he asserted and argued in the state supreme court was the guilt stage ineffective assistance claim involving the voluntary intoxication defense.  That was the only claim that court had not rejected on the merits or as moot in his first appeal from the denial of state collateral relief.  And in the second appeal that guilt stage ineffectiveness claim was the only one the Florida Supreme Court considered.  See Reaves, 942 So. 2d 874 (Fla. 2006).  The court did not take it upon itself to resurrect and reconsider any claims that it had decided in the first appeal, including the penalty stage ineffectiveness claim.

After the Florida Supreme Court rejected Reaves' appeal from the denial of his guilt stage ineffective assistance claim on remand, he filed in federal district court a 28 U.S.C. § 2254 petition for writ of habeas corpus.  He raised 25 claims in his petition, including the penalty stage ineffectiveness claim involving mitigating

"Because the Defendant has failed to establish that trial counsel was ineffective for failing to raise a voluntary intoxication defense and failing to retain experts who could testify properly as to the effects of substance abuse combined with the Defendant's mental defects, the Defendant's motion is denied."

4

circumstances.  The district court did not grant relief on that claim but instead granted relief on a claim that was not one of the 25 claims that Reaves had raised in his federal habeas petition or otherwise in the proceeding.  Not only that, but in granting relief the district court relied on evidence that had not even been before the Florida Supreme Court in the first appeal from the denial of state collateral relief.  We reverse.

## I.  FACTS AND PROCEDURAL HISTORY

We have recounted the facts underlying Reaves' conviction in considerable detail before.  See Reaves, 717 F.3d at 889–90.  So we will assume familiarity with that recounting and not repeat it in all of its detail here.  Early in the morning on September 23, 1986, Reaves tried to call a taxi to pick him up at a convenience store.  Id. at 889.  When the taxi did not show up quickly enough he dialed 911, but he hung up before speaking to the operator.  Id.  In response to the hang-up call Deputy Richard Raczkoski was dispatched to the convenience store, where he helped Reaves contact a taxi.  Id.  While they waited for the taxi to arrive, a .38 caliber pistol fell out of Reaves' pants, and a brief struggle ensued as Deputy Raczkoski tried to stop Reaves from grabbing the pistol.  Id.  Reaves got ahold of the pistol and, after Deputy Raczkoski turned to run, shot the deputy four times in the back.  Id.  He discharged the pistol a total of seven times, with each shot requiring a separate pull of the trigger.  Id.

5

Reaves later told a friend that Deputy Raczkoski had attempted to draw his own weapon and that he had pointed his gun in the deputy's face and warned him: "I wouldn't do that if I were you." Id. at 889–90. Reaves also told his friend that when the deputy pleaded for his life, he responded: "One of us got to go, me or you." Id. at 890. In a voluntary confession to the police, Reaves said that he "couldn't let that officer get that gun" because he believed that he was facing "a mandatory three years" for being a felon in possession of a firearm. Id.

## A. Reaves' State Court Proceedings

### 1. Criminal Trials and Appeals

In 1987 Reaves was tried, convicted, and sentenced to death for premeditated first degree murder. Id. The Florida Supreme Court reversed his conviction and remanded for a new trial on a ground not relevant to this appeal. Reaves v. State, 574 So. 2d 105, 107–08 (Fla. 1991). Reaves was retried in 1992. Reaves v. State, 639 So. 2d 1, 3 n.1 (Fla. 1994). At trial counsel's request the state trial court reappointed Dr. William Weitz, a clinical psychologist, as a mental health expert for the defense. Reaves, 717 F.3d at 891. Dr. Weitz had examined Reaves before his first trial in 1987. Id. He diagnosed Reaves, an African American veteran of the Vietnam War, with antisocial personality disorder, polysubstance abuse, and a disorder called Vietnam Syndrome, which Dr. Weitz defined as a "sub-clinical" variety of post-traumatic stress disorder (PTSD), id.,

6

involving a change in behavior occurring because of combat exposure. Trial counsel's strategy was to present a defense of excusable homicide using that mental health evidence, but the trial court found that Dr. Weitz's testimony was inadmissible and barred it from the guilt stage of the trial. Id. at 891–92. Nonetheless, trial counsel continued to focus largely on the defense of excusable homicide. See id. at 892. The jury, unconvinced, found Reaves guilty of premeditated first degree murder. See id.

At the penalty phase of the trial, Reaves presented eight witnesses who testified about his childhood and his military service in Vietnam. Fran Ross, an attorney who had grown up with Reaves, testified that as a child Reaves had been helpful and well-liked in the community. Reverend Leon Young, the pastor at Reaves' childhood church, testified that Reaves had been "a good Bible student," and Young had thought that Reaves might become a minister. Similarly, Otis Cobbs, who lived in the same neighborhood as Reaves, testified that Reaves had been "very respectable and very mannerful and a very energetic young man" who had been a model student. Charlie Jones, who was a few years older than Reaves and grew up with him, testified that Reaves had been "a fun-loving happy-go-lucky type fella." And Ann Covington, Reaves' sister, testified that before joining the army Reaves had been very gentle, caring, and obedient, and a devout Christian.

7

Ross, Jones, and Covington all testified that Reaves was different after he returned from Vietnam. Ross and Jones testified that it was apparent that Reaves had started to use drugs. Covington testified that after his experiences in the war Reaves had become unable to participate in family dinners, was anxious and tense, and could not be approached without giving him warning.

Hector Caban and William Wade, soldiers who served with Reaves in Vietnam, also testified. Reaves had arrived in Vietnam in November 1969. They told the jury how, shortly after his arrival, their squad was involved in a "U-shaped ambush," in which the enemy attacked them from three sides. Two of the men in Reaves' squad were killed in that ambush, and another was seriously injured. Caban, who served in the same squad as Reaves, described for the jury other actions that the squad was involved in during the ten months that he and Reaves were together in Vietnam. He estimated that he was involved in six to eight fire fights, and said that Reaves was involved "[m]ost of the time."

Although his testimony had been barred from the guilt phase of the trial, the state trial court permitted mental health expert Dr. Weitz to testify for Reaves at the penalty stage. The court qualified him as an expert in general psychology, clinical psychology, military psychology, Vietnam Syndrome, and "post-traumatic stress disorders." Dr. Weitz testified that he had diagnosed Reaves with antisocial personality disorder, polysubstance abuse, and Vietnam Syndrome, a term he

8

defined to mean "a series of psychological and behavioral reactions of veterans as they were returning from the combat service in Vietnam." He explained that Vietnam Syndrome was characterized by alienation, depression, rage, and increased use of alcohol and drugs. And he gave his opinion that Reaves' Vietnam Syndrome "impacted on the events of that evening" in the following ways, as he listed them:

> One: Because of use of cocaine and other substances on the night and the morning of that event, [Reaves'] judgment and perception were already impaired.

> Secondly: Because of perception at the time of the event of a situation out of control, intense stress and pressure — "panic" as he describes — panic on both parties, heightened fear and anxiety, the fear response is prevalent.

> The reaction to — the "survivor" reaction of perceiving his own life would be paramount. I believe, then, that the reaction of Mr. Reaves, the quickness of response, the sensation of fear, the recognition that things were panicked, uncontrolled and becoming unpredictable, that he sensed the danger to his own life, and his behavior was influenced by that perception.

Dr. Weitz also explained that he diagnosed Reaves with Vietnam Syndrome instead of PTSD because Reaves did not present all of the criteria required for a PTSD diagnosis. According to Dr. Weitz, Reaves had not, for example, reported flashbacks or bad dreams, which are criteria for a formal diagnosis of PTSD.

9

In rebuttal the State called Robert Ressler, a retired FBI criminologist and veteran (although not of the Vietnam War) to testify as an expert in military records. Ressler testified that Reaves had been honorably discharged and had received a number of medals and awards, including the Combat Infantryman's Badge, which is awarded for infantrymen assigned to a combat unit. But he also said that those medals and awards "were rather unremarkable and very routine for a person performing in Vietnam for a period of . . . one year." Ressler characterized Reaves' honorable discharge as a product of the wartime environment. He was of the view that because Reaves had been court-martialed for theft, "[c]hances are" that in peacetime he would not have been honorably discharged.

The State also called Lieutenant Colonel Joseph Cinquino, who had been a platoon leader in Vietnam, and who testified that he had never seen any soldiers suffering from PTSD. Finally, the State called Dr. McKinley Cheshire, an expert in psychiatry, who testified that Vietnam Syndrome was not included in the then-current Third Edition–Revised of the Diagnostic and Statistical Manual of Mental Disorders. Based on his review of the documents relating to Reaves, Dr. Cheshire was of the opinion that he "was really not suffering from a psychiatric illness," but instead Deputy Raczkoski "was executed by a drug dealer to cover up the

10

possibility of [Reaves'] going back to jail," and in doing that Reaves "was

motivated to be selfish, to protect himself, and to do away with the witnesses."

By a vote of ten to two, the jury recommended a death sentence. Reaves,

717 F.3d at 892. The trial judge found three aggravating circumstances, no

statutory mitigating circumstances, and three nonstatutory mitigating

circumstances. Reaves, 639 So. 2d at 3. He concluded that the aggravating

circumstances outweighed the mitigating circumstances, and sentenced Reaves to

death. See id. The Florida Supreme Court rejected the trial court's finding with

respect to one of the three aggravating circumstances — that the murder was

especially heinous, atrocious or cruel — but it affirmed Reaves' conviction and

also his sentence.[2] Id. at 6.

## 2. Initial State Post-Conviction Proceedings

Reaves then began pursuing collateral attacks on his conviction and

sentence. In his first Florida Rule of Criminal Procedure 3.850 motion he raised

27 claims, including ineffective assistance of counsel at the guilt and penalty

phases of his trial. Reaves contended that his counsel was ineffective at the guilt

stage for, among other things, failing to investigate and present a voluntary

---

[2] The aggravating circumstances that withstood scrutiny on appeal were that Reaves had been convicted of a felony involving the use or threat of violence to the person and that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. Reaves, 639 So. 2d at 3 n.2, 6 n.11. The nonstatutory mitigating circumstances that the trial court listed were that Reaves had been honorably discharged from the military, had a good reputation in his community up to the age of 16, and was considerate to his mother and good to his siblings. Id. at 3 n.3.

intoxication defense based on the combination of his mental health and substance abuse problems. He also claimed that in violation of Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087 (1985), Dr. Weitz had not provided adequate mental health assistance to aid his defense.

In addition, Reaves claimed that trial counsel had rendered ineffective assistance at the penalty stage. He asserted that counsel had been ineffective because he failed to: seek the assistance of experts in addictionology, psychopharmacology, neuropsychology, and psychiatry; explain to the jury how his substance abuse in conjunction with his mental health problems related to the murder; investigate his military service in Vietnam; provide Dr. Weitz with information relating to his military service and mental state; object to Ressler's qualification as an expert in military records; and "object to the introduction of prejudicial and inflammatory testimony." Finally, Reaves claimed that the cumulative effect of the "number and types of errors involved in his trial, when considered as a whole, resulted in the unreliable conviction and sentence."

The state trial court held a hearing, pursuant to Huff v. State, 622 So. 2d 982 (Fla. 1993), to determine whether any of the claims Reaves had raised in his Rule 3.850 motion required an evidentiary hearing. At the hearing Reaves argued that trial counsel should have hired a neuropsychologist, a psychologist, and an addictionologist. He stated that one of the experts he could proffer was "a black

12

male" who would testify that Reaves had PTSD and did not have antisocial personality disorder. He indicated that an unnamed neuropsychologist would testify about unspecified non-statutory mitigators. He also said that an unnamed psychologist would testify that Reaves had PTSD, about "statutory mitigators as well as a host of non-statutory mitigators," and would "provide specific testing results with five different tests that have to do with indication of PTSD that were available."

The state trial court denied Reaves' Rule 3.850 motion without an evidentiary hearing. With respect to the penalty phase ineffective assistance claim, the trial court found that Reaves' claim that trial counsel should have hired additional mental health experts was conclusory and refuted by the record, and that the "additional evidence relating to Reaves' enlistment in the military, his service in Vietnam, . . . and his addiction to heroin . . . . would have been either irrelevant or cumulative."

In 2002 the Florida Supreme Court affirmed in part and reversed in part the state trial court's judgment in the Rule 3.850 proceeding. Reaves, 826 So. 2d at 944. The part of the judgment that it reversed was the trial court's summary denial of the Reaves' guilt stage ineffective assistance claim relating to counsel's failure to pursue a voluntary intoxication defense; it remanded that claim for an evidentiary hearing. Id. at 938–39, 944. It dismissed as moot the cumulative error

13

claim in light of the remand, and it "affirm[ed] the trial court's denial of Reaves' postconviction motion in all other aspects." Id. The affirmance of the penalty stage ineffective assistance claim was on the merits, with the Florida Supreme Court specifically stating that it agreed with the state trial court that the additional mitigating evidence Reaves had alleged would have been irrelevant or cumulative to that which trial counsel had presented about Reaves' impoverished childhood, his drug addiction, and the conditions of his service in Vietnam. Id. at 941.

### 3. The Post-Remand State Proceedings

In March 2003 the state trial court held a three-day evidentiary hearing on Reaves' guilt phase ineffectiveness claim. Reaves called as witnesses his trial counsel and six expert witnesses: Dr. Weitz, Dr. Richard Dudley, Dr. Barry Crown, Dr. Deborah Mash, Dr. Erwin Parson, and Dr. Thomas Hyde. Because we described at length the testimony presented at the 2003 evidentiary hearing in our previous decision, Reaves, 717 F.3d at 894–97, we will not describe it in detail now. The takeaways are that Dr. Dudley testified that Reaves suffered from polysubstance abuse and PTSD. Id. at 895. Dr. Crown testified that Reaves suffered from brain damage in a part of his brain associated with understanding the long-term consequences of his behavior and that the combination of Reaves' use of cocaine and brain damage "would have resulted in a phenomenon called 'cocaine kindling,' which causes a person to have disrupted 'reasoning, judgment,

14

particularly short-term memory,' and to become impulsive and paranoid." Id. at 895–96. Dr. Mash testified that Reaves' extensive cocaine abuse rendered him paranoid and delusional at the time of the shooting and that cocaine use exacerbates the symptoms of PTSD. Id. at 896. Dr. Parson testified that at the time of the murder, Reaves was suffering from PTSD and "dissociation," with a history of chronic substance abuse, all of which combined to make him incapable of forming the specific intent to kill. Id. at 896–97. And Dr. Hyde testified that Reaves had a history of polysubstance abuse, depression, strong elements of PTSD, and a head injury which, if the injury occurred prior to the shooting, could have left him "disinhibited, impulsive, and prone to rash behaviors in combination with acute intoxication." Id. at 897.

In rebuttal the State called Dr. Cheshire, who reiterated his testimony from the penalty phase of the trial that Reaves "knew what he was doing" and had made a conscious decision to shoot the deputy in an attempt to avoid being sent back to prison. Id. Among the materials he had studied in reaching that opinion were ones showing that Reaves had told the police that he shot the deputy because he didn't want to go back to prison and told a friend that when the deputy pleaded for his life, Reaves replied: "One of us got to go, me or you." After the state court evidentiary hearing, Reaves supplemented the record with a 2003 finding by the

15

Department of Veterans Affairs that he was one hundred percent disabled due to PTSD relating to his military service and entitled to benefits for that reason.

The state trial court again denied Reaves' Rule 3.850 motion, finding that counsel did not perform deficiently at the guilt stage. Reaves appealed that decision to the Florida Supreme Court, where he argued that trial counsel rendered ineffective assistance at the guilt stage by failing to pursue a voluntary intoxication defense. He did not, however, re-assert his penalty phase ineffectiveness claim or even mention it. In 2006, the Florida Supreme Court affirmed the state trial court's rejection of Reaves' guilt stage ineffective assistance claim and its resulting denial of post-conviction relief following the remand. Reaves v. State, 942 So. 2d 874, 882 (Fla. 2006).

## B. Reaves' Federal Habeas Proceedings

### 1. 28 U.S.C. § 2254 Petition

In his § 2254 petition, which Reaves filed in 2010, he claimed that trial counsel was ineffective at the guilt and penalty stages of his trial. He alleged that at the penalty stage counsel should have sought assistance from experts in addictionology, psychopharmacology, neuropsychology, psychiatry, and in the "unique experience of an African-American Vietnam Veteran." He argued that the failure of counsel to do those things left him unable to explain to the jury the complexities of Reaves' psychological condition and the role it played in his crime.

16

Reaves also raised a cumulative error claim, alleging that the cumulative effect of the trial court's errors at the guilt and sentence stage resulted in an unreliable trial. In that claim Reaves identified five specific errors that he alleged had the cumulative effect of making his trial unfair:

> 1) the trial court's refusal to admit the prior inconsistent statements of a key witness; 2) the prosecutor[']s reference to Mr. Reaves as a "cocaine seller;" 3) the prosecutor's "golden rule" violation in closing argument where he asked the jury to put themselves in the victim's position; 4) the trial court's admission of evidence that Mr. Reaves attempted to sell cocaine to a police office[r] in Georgia and 5) the court's erroneous finding that the murder was heinous[,] atrocious and cruel.

He did not include in this claim of cumulative error anything about his counsel's performance at either stage of the trial.

The district court granted Reaves an evidentiary hearing on his penalty phase ineffective assistance claim, but in the same order it stayed that hearing because it decided to grant him relief on his guilt phase ineffectiveness claim. The State appealed the grant of relief on that claim, and we reversed. See Reaves, 717 F.3d at 905. We concluded that Reaves had not shown prejudice based on counsel's alleged errors at the guilt phase, and declined to address whether he had shown that trial counsel performed deficiently. Id. at 900, 905. We remanded the case for further proceedings on Reaves' unaddressed penalty phase ineffective assistance claim. Id. at 907.

17

2.  The District Court's Post-Remand Proceedings

In March 2014, on remand from this Court, the district court held an evidentiary hearing on Reaves' penalty phase claim.  After the hearing on that claim the district court entered an order granting Reaves' § 2254 petition based on the combined impact of counsel's errors at the guilt and penalty phases — not on the cumulative effect of the trial court's errors, which was the only cumulative or combined effect claim that Reaves had pleaded.  In assessing the combined impact of what it viewed as counsel's errors at the guilt and sentence stages, the district court reviewed de novo trial counsel's performance at both stages.  It found that counsel had performed deficiently at both stages by failing to investigate and present evidence about Reaves' PTSD and substance abuse.  The court also found that counsel performed deficiently at the penalty stage by failing to object to Ressler as an expert in military records and failing to object to Dr. Cheshire's testimony that Reaves "executed" Deputy Raczkoski because he was a drug dealer attempting to escape a return to prison.  The district court rejected as unreasonable the Florida Supreme Court's decision that Reaves had not shown prejudice based on any deficient performance by counsel.

In making those determinations the district court stated that, although it had considered the evidence presented at the federal evidentiary hearing in deciding the performance component of the sentence stage ineffectiveness claim, it would have

18

reached the same result even if it had considered only "the state court record."  But by "the state court record" the district court meant not only the state court record that existed at the time the Florida Supreme Court decided the penalty stage ineffectiveness claim on the merits but also the evidence that was introduced in the later state court hearing on a different claim.[3]

## II. DISCUSSION

"When reviewing a district court's grant or denial of habeas relief, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error."  Reaves, 717 F.3d at 899 (quotation marks omitted).  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[3] In part of one sentence in the next to last page of its 77-page order the district court indicated that even if not allowed to consider the combined impact of counsel's errors at both stages of the trial, it still would have granted habeas relief on the sentence because of errors counsel committed at the sentence stage.  We interpret that to be a ruling that the penalty stage ineffective assistance claim has merit.  And we disagree with that ruling.  See infra, Part II(D).

19

A habeas petitioner alleging ineffective assistance of counsel must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  Counsel's performance was deficient only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  A petitioner can establish prejudice only by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694, 104 S. Ct. at 2068.

A. The District Court's Grant of Relief on
a Claim That Reaves Did Not Make

In his § 2254 petition Reaves made 25 claims, including claims of innocence, of errors by the state trial court and the state habeas court, of judicial bias, of prosecutorial misconduct, of the unconstitutionality of Florida's capital sentencing scheme, of incompetence to be executed, of ineffectiveness of counsel at the pretrial, guilt, and penalty phases and on appeal, and of  "cumulative error" regarding the errors the Florida Supreme Court found on direct appeal but decided were harmless.

The district court, however, did not actually grant relief on any of those 25 claims.  It granted relief on a claim that Reaves did not raise, a claim the district

20

court called Reaves' "cumulative effect, or combined impact" claim. According to the district court, the claim was that "the cumulative effect, or combined impact, of defense counsel's errors at the penalty phase [sic] and sentencing phase" prejudiced Reaves in sentencing. We'll call that the "combined impact" claim for short.

Reaves did raise a cumulative error claim in his § 2254 petition but it was not the claim on which the district court granted him relief. Despite the confusing similarity in names, Reaves' cumulative error claim is different from the combined impact claim that the district court crafted for him and then granted relief on. What Reaves asserted and argued as his cumulative error claim is that a number of trial court errors that the Florida Supreme Court on direct appeal found to be harmless had a cumulative effect that rendered his trial unfair. See supra at 17 (quoting that claim). The cumulative error claim Reaves pleaded and pursued said nothing about errors that counsel made at the sentence stage (or at the guilt stage for that matter). By contrast, the district court's combined impact claim asserted that the errors of trial counsel at the guilt and sentence phases rendered the result of the sentence phase unfair. Whatever else may be said of the claim that the district court constructed for Reaves, it is not a claim that he made to the court. The first time that claim came into existence in this federal habeas case was when the

21

district court issued an order that both created the claim and granted relief based on it.

Habeas petitioners must specify the grounds on which they assert that they are entitled to relief. Rules Governing § 2254 Cases in the United States District Courts, Rule 2(c)(1) ("The [§ 2254] petition must: (1) specify all the grounds for relief available to the petitioner . . . ."). "To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011) (citation omitted); see also Maradiaga v. United States, 679 F.3d 1286, 1293–94 (11th Cir. 2012) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties. That federal courts can take notice of [the law] does not mean that a party . . . need not cite it to the court or present argument based upon it, or that federal courts must scour the law . . . for possible arguments a [party] might have made.") (citation and quotation marks omitted); cf. In re Antrobus, 563 F.3d 1092, 1099–1100 (10th Cir. 2009) ("Under our rules we are not permitted to invent arguments even for pro se litigants; certainly, we cannot revive ones foregone nearly a year ago by such well-counseled litigants."); Yeomalakis v. FDIC, 562 F.3d 56, 61 (1st Cir. 2009) ("It is not our job, especially in a counseled civil case, to create arguments for someone

22

who has not made them or to assemble them from assorted hints and references scattered throughout the brief."). In this case, the district court not only concocted new arguments but also a new claim for Reaves and resurrected arguments that he had abandoned by the time he went into federal court.

Reaves' § 2254 petition alleged that he received ineffective assistance of trial counsel at the penalty stage because counsel failed to investigate and present evidence of Reaves' polysubstance addiction, his combat-related PTSD, and the effect those disorders had on his behavior.[4] The district court agreed for those reasons and also because counsel failed to object to Ressler as an expert in military records and to Dr. Cheshire's testimony about Reaves' motivation for killing Deputy Raczkoski. And it found that trial counsel performed deficiently at the guilt stage, which it considered not as a freestanding claim but in support of its combined impact theory for sentence stage relief.

Neither Reaves' § 2254 petition nor his memorandum of law in support of his petition mentioned anything about the effect of trial counsel's purported guilt-

---

[4] Reaves' § 2254 petition also alleged ineffective assistance because trial counsel did not investigate and present evidence of Reaves' difficult childhood and his experience as an African American Vietnam veteran, but the district court did not rely on that allegation and Reaves does not argue that it is an alternative ground for affirming the district court. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) ("[The appellee] abandoned that exception as a defense by failing to list or otherwise state it as an issue on appeal."); La Grasta v. First Union Sec., Inc., 358 F.3d 840, 847 n.4 (11th Cir. 2004) ("[The appellee] has waived the argument by failing to discuss it in its answer brief. [The appellee]'s reference to having made this argument before the district court in its statement of facts is not an adequate substitute for elaborating the merits of the argument on appeal.").

23

stage errors on the penalty stage, or about Ressler's testimony about his military records, or about Dr. Cheshire's testimony concerning Reaves' motivation for killing the deputy. Not only that, but Reaves did not mention any of those things in support of any of his other claims. They cannot be found anywhere in his federal habeas petition. Nor can they be found in the memorandum he filed with the district court after the evidentiary hearing in that court. Reaves' argument in the district court in support of his penalty phase ineffective assistance claim was that trial counsel should have investigated and presented evidence about how his combat-related PTSD and polysubstance addiction affected his behavior on the night of the murder. That is the only contention that the district court should have considered in ruling on the penalty phase ineffective assistance claim.

The district court justified its consideration of those unpleaded contentions and theories by citing "Claim XXII" from Reaves' § 2254 petition. But that claim asserted only that trial counsel had provided ineffective assistance at the guilt phase by failing to investigate and prepare a voluntary intoxication defense. It did not assert that trial counsel should have investigated and presented evidence of Reaves' mental illness or addiction at the penalty phase and it did not provide the district court with a basis for considering the court's own combined impact claim.

As support for the existence of its combined impact claim, the district court relied on a claim that Reaves had made in his state Rule 3.850 motion. But even if

24

he raised and exhausted a combined impact claim in his state habeas proceedings, Reaves, who was represented by experienced counsel in his federal habeas proceeding, was required to raise that claim in his § 2254 petition if he wanted federal relief on it. Rules Governing § 2254 Cases, Rule 2(c)(1); Fils, 647 F.3d at 1284. A petitioner who has exhausted a claim in his state collateral proceedings is free to challenge the state courts' resolution of that claim by asserting it in his federal proceeding. If he chooses not to assert that claim, however, the district court should abide by his choice and not assert the claim for him. See Maradiaga, 679 F.3d at 1293 ("[I]t is well settled that issues not raised in the district court in the first instance are forfeited."); Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1152 (11th Cir. 2011) (same); Fils, 647 F.3d at 1284 ("To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties.") (citation omitted); Resolution Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments . . . ."). A federal habeas court may not take over a petitioner's case and impose its own view of the claims that should be raised. Allowing a court to do so would blur the line between judge and advocate.

25

Because Reaves did not present any claim to the district court about the combined impact that trial counsel's errors at the guilt phase may have had on the penalty phase, or any claim about the testimony of Ressler or Dr. Cheshire, the district court should not have presented the claim for him. Instead, in the proceeding on remand from this Court, the district court should have reviewed and decided only the one claim Reaves had pleaded and that remained after our earlier decision in this case: the claim that trial counsel was ineffective at the penalty phase for failing to investigate and present mental health mitigating evidence relating to Reaves' PTSD and polysubstance addiction.

We closed our previous opinion in this case with the instruction that we were "remand[ing] for further proceedings on Reaves' outstanding claim of ineffective assistance of counsel during the penalty phase of his retrial." See Reaves, 717 F.3d at 907. That was our mandate, which the district court should have followed. If it had followed our mandate, the district court would have limited itself to consideration of whether counsel rendered ineffective assistance "during the penalty phase." Id. (emphasis added). That it did not was error. We will honor and enforce our own mandate by considering only the claim that we instructed the district court to consider on remand, not the combined impact claim Reaves never pleaded.

26

B.  State Court Adjudication on the Merits of the Penalty Stage
Ineffectiveness Claim, a Claim that Reaves Did Make

If a state court has already adjudicated on the merits a prisoner's claim

seeking habeas relief, the AEDPA standard guides review of the state court's

decision, and a federal habeas court may grant relief only if the adjudication was

contrary to, or an unreasonable application of, clearly established federal law, or

resulted in a decision that was based on an unreasonable determination of the facts.

28 U.S.C. § 2254(d).  If, however, no state court has adjudicated the merits of a

claim that was properly presented, "federal habeas review is not subject to the

deferential standard that applies under AEDPA . . . .  Instead, the claim is reviewed

de novo."  Cone v. Bell, 556 U.S. 449, 472, 129 S. Ct. 1769, 1784 (2009).

An ineffective assistance claim has two parts:  (1) whether counsel

performed deficiently and, if so (2) whether the deficient performance prejudiced

the defense.  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  "Because both parts

of the test must be satisfied in order to show a violation of the Sixth Amendment,

the court need not address the performance prong if the defendant cannot meet the

prejudice prong, or vice versa."  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.

2000) (citation omitted).  As a result, when a state court's decision on an

ineffective assistance claim clearly rests on only one prong of the Strickland test,

we conduct a plenary review of the other one, if necessary.  Johnson v. Sec'y,

Dep't of Corr., 643 F.3d 907, 930 (11th Cir. 2011); see also Rompilla v. Beard,

27

545 U.S. 374, 390, 125 S. Ct. 2456, 2467 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice and so we examine this element of the Strickland claim de novo . . . .") (citation omitted).

But the fact that a state court did not explain every step of its decision-making process does not mean that it did not adjudicate every prong of an ineffective assistance claim. See Lee v. Comm'r, Ala. Dep't of Corr., 726 F.3d 1172, 1211 (11th Cir. 2013) ("[W]e reject [the] claim that a state court's written opinion involves an unreasonable application of federal law and is not entitled to deference unless that opinion on its face 'shows its work . . . .'"). "[W]e afford AEDPA deference even where the state court's decision is a summary adjudication or engages in only some evaluation . . . ." Id. at 1213; cf. Johnson, 643 F.3d at 930 & n.9 (explaining that we were reviewing de novo an unaddressed component of the petitioner's ineffective assistance claim because the state court "did provide an explanation of its decision which makes clear that it ruled on the deficiency prong but did not rule on the prejudice prong") (emphases added).

In his Rule 3.850 motion Reaves claimed that counsel was ineffective at the penalty phase for failing to investigate and present mitigation evidence about his polysubstance addiction in conjunction with his combat-related PTSD, and how those disorders combined to "play[ ] a role in putting William 'Fat' Reaves on trial for his life." The state trial court found that the part of Reaves' penalty phase

28

claim relating to mental health experts was conclusory and refuted by the record, and that the proposed additional evidence relating to his military service and substance abuse was irrelevant or cumulative. In 2002 the Florida Supreme Court remanded for an evidentiary hearing limited to one of Reaves' guilt phase claims, but it affirmed on the merits the part of the state trial court's order denying Reaves relief on his penalty phase ineffective assistance claim. Reaves, 826 So. 2d at 944.

In analyzing Reaves' penalty phase ineffective assistance claim, the Florida Supreme Court addressed both the prejudice and the deficient performance prongs of the Strickland test. First, it explained what a petitioner needs to show to establish prejudice. Id. at 941. On the deficiency prong, the court stated that: "It is not negligent [for an attorney] to fail to call [as witnesses] everyone who may have information about an event. Once counsel puts on evidence sufficient, if believed by the jury, to establish his point, he need not call every witness whose testimony might bolster his position." Id. at 941 n.12 (quoting Jennings v. State, 583 So. 2d 316, 321 (Fla. 1991)). As that quotation makes clear, the Florida Supreme Court rejected Reaves' penalty stage ineffective assistance of counsel claim on the performance prong as well as the prejudice prong. Relevant to both prongs, it concluded that "[a] review of the record supports the trial court's finding that the evidence which he now seeks to introduce is cumulative." Id. at 941.

29

Because the Florida Supreme Court in its 2002 decision did reject Reaves'
penalty stage ineffective assistance of counsel claim on the merits as to both the
performance and prejudice requirements, we afford both of those parts of its
decision § 2254 deference.

## C. The State Court Record

The state court record in this case is lengthy and complex, involving
multiple trials, hearings, and appeals.  In his state habeas proceedings, Reaves filed
a Rule 3.850 motion, which the state trial court denied without a hearing.  The
Florida Supreme Court reviewed that court's judgment and in 2002 it affirmed the
denial of Reaves' penalty phase ineffective assistance claim but remanded for a
hearing on "the claims relating to whether counsel was ineffective for failing to
raise a voluntary intoxication defense and the related subclaims" at the guilt stage.
Reaves, 826 So. 2d at 941–42, 944.  Following that directive, in 2003 the state trial
court held the evidentiary hearing on the guilt stage ineffectiveness claim and
again denied Reaves' Rule 3.850 motion.  In 2006 the Florida Supreme Court
affirmed that denial.  Reaves, 942 So. 2d at 882.

Although the Florida Supreme Court's rejection of Reaves' penalty phase
ineffective assistance claim occurred in its 2002 decision, the district court
reviewed that rejection in light of the the entire state court record, including the
2003 evidentiary hearing, which was not even in existence when the Florida

30

Supreme Court decided the claim. The district court justified considering that later evidence on the ground that "in 2006, the Florida Supreme Court had all of that evidence [from the 2003 evidentiary hearing] and unreasonably did not reconsider its finding of cumulativeness." When the state supreme court considered and rejected the penalty stage ineffectiveness claim on the merits, it did not have that evidence. It did not have that evidence until years later when it reviewed the state trial court's post-remand decision on the guilt stage claim. The district court believed that the Florida Supreme Court had a duty to resurrect on its own motion a claim that it had already rejected and to reconsider it based on evidence submitted later, on another claim, following a limited remand for another purpose, even though the petitioner did not ask it to do so.

To justify its own consideration of later acquired evidence, the district court relied on Cullen v. Pinholster, 563 U.S. 170, 131 S. Ct. 1388 (2011). That decision, however, does not say or hold that a federal habeas court may consider a part of the state court record that was created in connection with another claim and that did not even exist when the state court decided the claim that is being reviewed by the federal court. The Pinholster case, which actually reversed a grant of habeas relief, was not about that.

Pinholster had asserted in a state habeas petition a claim that the state supreme court summarily denied. Pinholster, 563 U.S. at 177–78, 131 S. Ct. at

31

1396.  He later filed a second state habeas petition reiterating the same claim and adding several new allegations and evidence relating to that claim.  Id. at 178, 131 S. Ct. at 1396–97.  The state supreme court summarily denied the claim again.  Id. at 178, 131 S. Ct. at 1397.  Pinholster then filed a federal habeas petition and was granted an evidentiary hearing.  Id. at 179, 131 S. Ct. at 1397.  Based on the evidence presented at that federal evidentiary hearing, the district court granted his § 2254 petition.  Id. The Ninth Circuit affirmed, but the Supreme Court reversed.  Id. at 174, 180, 131 S. Ct. at 1394, 1397.

The Supreme Court held that in deciding whether a state court's determination was unreasonable under § 2254(d)(1), "review . . . is limited to the record that was before the state court that adjudicated the claim on the merits."  Id. at 181, 131 S. Ct. at 1398.  The Court explained:

> Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.

Id. at 181–82, 131 S. Ct. at 1398 (emphases added).

In this case, the record that was in existence at the time the Florida Supreme Court decided Reaves' penalty phase ineffective assistance claim in 2002 did not include — and obviously could not have included — the 2003 state court

32

evidentiary hearing.  Nor did it include anything else that came after the 2002 decision, such as the Department of Veterans Affairs disability determination in 2003.  In keeping with the Pinholster decision, the district court in reviewing the penalty stage ineffectiveness claim should have confined itself to the state court record that existed in 2002.  It did not do that.

Instead, the district court also considered evidence from the 2003 evidentiary hearing on Reaves' guilt stage ineffectiveness claim.  In considering evidence that was submitted in state court later and on a different claim, the district misread footnote 12 of the Pinholster opinion.  In the Pinholster case, as we have mentioned, there were two state supreme court decisions on the same claim.  Id. at 177–78, 131 S. Ct. at 1396–97.  The evidentiary record was larger at the time of the second decision.  Id. at 178, 131 S. Ct. at 1396.  In footnote 12 the Supreme Court discussed, but did not decide, the question of whether in order to prevail Pinholster was required to prove that both decisions of the state supreme court were unreasonable, or only that the later decision — the record of which "include[d] all of the evidence that Pinholster ever submitted in state habeas" — was unreasonable.  Id. at 188 n.12, 131 S. Ct. at 1402 n.12.  The Supreme Court declined to answer that question because it concluded that the state court's second decision was not unreasonable, even considering all of the evidence favorable to Pinholster that was in the record by then.  Id.  What the Supreme Court did in

33

footnote 12 of its opinion was to take "the most favorable approach for Pinholster" because even doing that "Pinholster has failed to satisfy § 2254(d)(1)." Id. The Court essentially assumed away a non-dispositive issue that did not affect the result, something courts do quite often. That is not at all what the district court did in this case.

The actual holding of Pinholster, once again, is that "review . . . is limited to the record that was before the state court that adjudicated the claim on the merits." Id. at 181, 131 S. Ct. at 1398. That includes the evidence in the record when the state court made the decision being examined, not any other evidence that was developed later on another claim. As the Supreme Court explained, that holding is in keeping with the deferential standard in § 2254(d), which confines a federal habeas court to examining "the state-court decision at the time it was made," and, it follows, "the record in existence at that same time" as that decision. Id. at 181–82, 131 S. Ct. at 1398.

The Florida Supreme Court made the decision to deny relief on Reaves' penalty phase ineffective assistance claim in 2002, not in 2006 after the case was appealed again following remand on another claim. Reaves, 826 So. 2d at 932. When the case was before the state supreme court on that later appeal after remand, Reaves did not re-assert the penalty stage ineffectiveness claim or ask the court to reconsider its rejection of that claim four years earlier. The Florida Supreme Court

34

was not obligated to revisit the claim on its own motion, even assuming that it could have under Florida law.  The district court was barred, under Pinholster and § 2254(d), from considering the 2006 state court record in reviewing the Florida Supreme Court's 2002 decision on Reaves' penalty phase ineffective assistance claim.

In support of its decision to consider the entire state court record, the district court also cited our decision in Ferrell v. Hall, 640 F.3d 1199 (11th Cir. 2011).  In that case the petitioner asserted on direct appeal a claim of ineffective assistance of trial counsel, which the state supreme court rejected on the merits.  Id. at 1212.  Ferrell then asserted in a state post-conviction motion a claim that appellate counsel had been ineffective in investigating and presenting the claim that trial counsel was ineffective.  Id. at 1220.  The motion was granted by the state trial court, but the state supreme court reversed, concluding that appellate counsel had been effective in developing the record on trial counsel's effectiveness.  Id. at 1220–21.

Ferrell then filed in federal court a § 2254 petition raising claims of ineffective assistance of both trial and appellate counsel.  Id. at 1222.  The district court denied his petition but we reversed.  Id. at 1222, 1245–46.  In doing so we concluded that the state supreme court had unreasonably applied Strickland in denying both Ferrell's claim (raised on direct appeal) that trial counsel had been

35

ineffective, and his claim (raised in his state post-conviction proceeding) that appellate counsel had been ineffective for failing to adequately investigate and present the claim that trial counsel was ineffective. Id. at 1233, 1236, 1239.

In reaching our decision in Ferrell, we considered both claims on "the full record that was before the Georgia Supreme Court when it ruled on the appellate-counsel claim," even though that court had decided the trial counsel claim earlier based on a more limited direct appeal record. Id. at 1226 n.16. We did so for two reasons. First, although the state supreme court had rejected the trial counsel ineffectiveness claim on direct appeal before the state habeas record was developed, when that court later decided the appellate counsel ineffectiveness claim in the state habeas appeal it "repeatedly discussed trial counsel's performance." Id. In other words, the state supreme court had revisited the trial counsel ineffectiveness claim when it decided the appellate counsel ineffectiveness claim. And second, appellate counsel had performed ineffectively in developing the record on the trial counsel claim. Id.

The Ferrell decision is distinguishable from this case. In that case we could and did review the decision on the trial counsel claim using the state court record that was later developed on the appellate counsel claim because that is what the state supreme court did. In deciding the appellate counsel claim the state court had effectively revisited, reconsidered, and re-decided the trial counsel claim in light of

36

the larger record.  See id.  So we could too.  By contrast, in this case, the Florida Supreme Court rejected Reaves' claim once, and never revisited or addressed it again.  And the Florida Supreme Court's later rejection of Reaves' guilt phase claim did not require that court to reconsider his penalty phase ineffective assistance claim.  The Ferrell decision did not authorize the district court to consider the part of the state court record in Reaves' case that did not exist when the Florida Supreme Court issued the 2002 decision that the district court was reviewing.

The district court determined that "the Florida Supreme Court had a duty to consider the entire state court record when it finally dismissed" Reaves' Rule 3.850 motion in 2006.  The district court did not point to any decision, nor have we found one, holding that a court has a duty to reconsider — without even being asked — a claim that was denied years before because evidence that was later submitted on some other claim may bear on the claim that the court rejected years before.

Reaves never argued — and still does not — that the Florida Supreme Court had any such duty.  The closest he comes is in his statement that "[p]enalty phase considerations were . . . still on the table during the remand" to the state trial court for an evidentiary hearing on the guilt stage ineffectiveness claim, so the Florida Supreme Court "had an opportunity to address [those considerations] in 2006." Appellee's Br. at 46, 52.  We disagree.  The only claim that was "on the table

37

during the remand" was the claim that the Florida Supreme Court put on the table when it remanded the case, which was the guilt stage ineffective assistance claim. In any event, even if we assume that that court had an "opportunity to address" the penalty stage ineffectiveness claim again after the case returned from remand, an opportunity is not a duty.

We reject the proposition that when a case returns from a limited remand for an evidentiary hearing on a particular issue the appellate court, without even being asked to do so, is required to sift through the record looking for a basis to upend its earlier decision of different issues. The Florida Supreme Court had no duty to do that in Reaves' case, and the district court erred in considering parts of the state court record that were not before the Florida Supreme Court when it decided the merits of Reaves' penalty phase ineffective assistance claim in 2002.

## D. Whether the Florida Supreme Court's Decision was Unreasonable

Reaves asserted in his Rule 3.850 motion that counsel was ineffective at the penalty phase for failing to investigate and present mitigation evidence about his polysubstance addiction in conjunction with his combat-related PTSD, and how those disorders "played a role in putting William 'Fat' Reaves on trial for his life." The Florida Supreme Court determined that counsel was not ineffective in that way because the proposed additional evidence was cumulative. Reaves, 826 So. 2d at 941. The question before us is whether the Florida Supreme Court's decision on

38

the penalty stage ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

"[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000).  Under § 2254(d)(1), to result in a decision that was "contrary to" clearly established federal law, the state court must have "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decide[d] a case differently than [the] Court has on a set of materially indistinguishable facts."  Id. at 412–13, 120 S. Ct. at 1523.  To result in a decision that involved an "unreasonable application of" clearly established federal law, the state court must have "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case."  Id. at 413, 120 S. Ct. at 1523.

It is not enough to justify federal habeas relief that the federal court would have reached a different decision or is convinced that the state court decision is wrong.  White v. Woodall, 572 U.S. __, 134 S. Ct. 1697, 1702 (2014) ("[A]n unreasonable application of [Supreme Court] holdings must be objectively

39

unreasonable, not merely wrong; even clear error will not suffice.") (quotation marks omitted); <u>Harrington v. Richter</u>, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011) ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002) ("An unreasonable application of federal law is different from an incorrect application of federal law.") (quotation marks and emphasis omitted); <u>Williams</u>, 529 U.S. at 411, 120 S. Ct. at 1522 ("Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.").

As for § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849 (2010).  "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." <u>Brumfield v. Cain</u>, 576 U.S. __, 135 S. Ct. 2269, 2277 (2015) (quotation marks and alterations omitted).

We have explained how difficult it is for a petitioner to establish that a state court's rejection of an ineffective assistance claim was unreasonable:

Even without the deference due under § 2254, the Strickland standard for judging the performance of counsel "is a most deferential one." Harrington, 562 U.S. at 105, 131 S. Ct. at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

Johnson, 643 F.3d at 910–11 (citations altered).

We have also held that counsel's failure to present cumulative evidence is not ineffective assistance. See Turner v. Crosby, 339 F.3d 1247, 1277 (11th Cir. 2003) (concluding trial counsel's performance was not deficient for failing to submit cumulative testimony to the jury during the penalty phase of trial); Glock v. Moore, 195 F.3d 625, 636 (11th Cir. 1999) (concluding that, "where much of the new evidence that [petitioner] presents is merely repetitive and cumulative to that which was presented at trial," the petitioner cannot show prejudice). And while a complete failure to investigate mitigating evidence would be deficient performance, see Strickland, 466 U.S. at 690–91, 104 S. Ct. at 2066 ("[C]ounsel has a duty to make reasonable investigations . . . ."), counsel's decision not to investigate for more mitigating evidence of the same kind counsel had already discovered is not ineffective if the additional evidence would be cumulative of the evidence already discovered, cf. Turner, 339 F.3d at 1277; Glock, 195 F.3d at 636. As we have said, "the fact that other witnesses could have been called or other

41

testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel." Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 647 (11th Cir. 2016) (quotation marks omitted); see Waters v. Thomas, 46 F.3d 1506, 1512, 1514 (11th Cir. 1995) (en banc). As a result, if the Florida Supreme Court's cumulativeness finding was not unreasonable, its rejection of Reaves' ineffective assistance claim was also not unreasonable in view of the deference we owe its decision.

At the penalty phase, counsel called five witnesses who testified about Reaves' excellent childhood reputation in the neighborhood he grew up in. Three of them testified about how different Reaves was when he returned from his service in Vietnam, from his drug use to his newfound inability to spend time with the family he had once been close to. Defense counsel also presented witnesses who testified about how Reaves was drafted into the military, sent to Vietnam where he served for a year, and returned a changed man who was addicted to drugs and suffering from Vietnam Syndrome. To back up that diagnosis counsel also called veterans who had been with Reaves in Vietnam to describe what he had been through there. They described, for example, how Reaves and his squad had been caught up in six or eight firefights. In one of them they were caught in a "U-

42

shaped ambush" in which some men were killed or seriously injured. Dr. Weitz explained to the jury that the Vietnam Syndrome and substance abuse "impacted on the events of [the] evening" of the murder by impairing Reaves' judgment and heightening his fear and anxiety leading to "a fear response" and "the 'survivor' reaction" of perceiving that his own life was in danger.

In spite of the presentation of that evidence to the jury, in his state Rule 3.850 motion Reaves claimed that counsel was ineffective for failing to hire experts in addictionology, psychopharmacology, neuropsychology, psychiatry, "and the unique experience of the African-American Vietnam Veteran." Those unnamed experts, Reaves said, would have been able to "explain the complexities of [his] psychological condition and how it played a role in putting William 'Fat' Reaves on trial for his life." The motion described how Reaves was drafted into military service, entered a combat zone in Vietnam in November 1969, and "soon became addicted to heroin," an addiction he was treated for when he returned to the United States in November 1970. The motion also described at length general combat conditions in Vietnam and Cambodia.

Later, at Reaves' Huff hearing, he expanded on those assertions, stating that one of his unnamed experts could have testified that Reaves had PTSD and did not have antisocial personality disorder, an unnamed neuropsychologist could have testified about unspecified non-statutory mitigators, and an unnamed psychologist

43

could have testified that Reaves had PTSD and would "provide specific testing results with five different tests that have to do with indication of PTSD that were available." But Reaves never explained how a diagnosis of Vietnam Syndrome was different from a diagnosis of PTSD in some way that would have made a difference to the jury or judge.

Based on the record that the Florida Supreme Court had before it at the time of its 2002 decision on the penalty phase ineffective assistance claim, which is the only record that we may consider in reviewing that decision, the Florida Supreme Court did not unreasonably conclude that Reaves' proposed additional evidence about his mental health and substance abuse was cumulative.[5] Its rejection of his penalty phase ineffective assistance claim was not an unreasonable application of clearly established federal law.

In granting relief, the district court relied on the Supreme Court's decision in Porter v. McCollum, 558 U.S. 30, 130 S. Ct. 447 (2009). The Porter case bears some similarities to this one, but there are material differences. In Porter the

---

[5] Reaves also contended in his brief in support of his § 2254 petition that trial counsel was ineffective for failing to provide Dr. Weitz with sufficient information to properly evaluate his behavior. In his state Rule 3.850 motion, he had contended that "[c]ounsel was also ineffective regarding . . . failure to provide Reaves' in-depth taped interview to the police upon his arrest in Georgia on September 25, 1986 to Dr. Weitz; failure to provide Dr. Weitz with statements from other soldiers that served with Reaves in the military; failure to provide Dr. Weitz with records from Washington; failure to provide Dr. Weitz with Veterans' Administration records." Exh. C-PCR1-4 at 577–79. But he did not explain what difference those records would have made to Dr. Weitz's report or findings. See id. The Florida Supreme Court rejected that claim as conclusory. Reaves, 826 So. 2d at 942. That conclusion was not unreasonable.

44

petitioner had murdered his former girlfriend and her new boyfriend.  Id. at 31, 130 S. Ct. at 448.  At the penalty phase "[t]he sum total of the mitigating evidence was inconsistent testimony about Porter's behavior when intoxicated and testimony that Porter had a good relationship with his son."  Id. at 32, 130 S. Ct. at 449.  That was all.

Porter was sentenced to death for the murder of his former girlfriend but not for the murder of her boyfriend.  Id.  During his state habeas proceedings, he introduced evidence of "his abusive childhood, his heroic military service and the trauma he suffered because of it, his long-term substance abuse, and his impaired mental health and mental capacity."  Id. at 33, 130 S. Ct. at 449.  The state court deciding Porter's claim did not address the deficient performance part of the Strickland test, instead concluding that Porter could not show prejudice based on the failure to introduce all that mitigating circumstances evidence.  Id. at 36, 130 S. Ct. at 451.  As a result, the Supreme Court considered the deficient performance component de novo and reviewed the prejudice component with § 2254(d) deference.  Id. at 39, 41, 130 S. Ct. at 452, 453.

The Supreme Court concluded that Porter's attorney had performed deficiently because he had only one short meeting with Porter about the penalty phase, he "did not obtain any of Porter's school, medical, or military service records or interview any members of Porter's family," and "he ignored pertinent

45

avenues for investigation of which he should have been aware," such as court-ordered competency evaluations describing Porter's education, military service, and childhood abuse. Id. at 39–40, 130 S. Ct. at 453.

The Court also concluded that the state court unreasonably applied Strickland in finding that Porter had not established prejudice. Id. at 42, 130 S. Ct. at 454. The Court explained that "[t]he judge and jury at Porter's original sentencing heard almost nothing that would humanize Porter or allow them to accurately gauge his moral culpability." Id. at 41, 130 S. Ct. at 454. And, the Court concluded, the aggravating circumstances were not so strong that additional mitigating evidence would not have mattered. Id. at 41–42, 130 S. Ct. at 454.

There are several important differences between the Porter decision and this case. First, the Supreme Court was reviewing de novo the state court's determination on the deficiency component of ineffective assistance because the state court had not addressed it. Id. at 39, 130 S. Ct. at 452. In this case, by contrast, we must review with § 2254(d) deference both the deficiency and prejudice parts of the Florida Supreme Court's determination on the penalty stage ineffectiveness issue because that court decided both parts on the merits. Second, in Porter the Supreme Court was able to consider all of the evidence that had been presented in Porter's state habeas proceedings because that evidence was in the record and before the state court when it decided the claim. See id. at 33, 130

46

S. Ct. at 449.  In contrast, we cannot consider the evidence presented at the 2003 state court evidentiary hearing on the guilt stage ineffectiveness claim or at the 2014 federal evidentiary hearing because none of that evidence was before the Florida Supreme Court in 2002 when it denied relief on Reaves' penalty phase ineffective assistance claim.

Finally, the Porter decision is also distinguishable because trial counsel in that case did no investigation into Porter's "abusive childhood, his heroic military service and the trauma he suffered because of it, his long-term substance abuse, and his impaired mental health and mental capacity." Id.  That was deficient performance because "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S. Ct. at 2066.  In this case, by contrast, counsel did investigate, and in fact presented evidence about Reaves' substance abuse and mental illness, as well as about his childhood and sterling reputation in the community when he was child.  See supra at 42–43. And nothing that was specifically alleged in Reaves' Rule 3.850 motion was information that trial counsel did not have and present during the penalty phase.

The fact that habeas counsel, years after the trial, direct appeal, retrial, and second direct appeal, found experts prepared to testify that Reaves had PTSD instead of Vietnam Syndrome does not establish that counsel's investigation and

47

presentation of mitigating evidence was outside "the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065. And, more to the point, it does not show that, based on the record before it, the Florida Supreme Court's 2002 decision that counsel's performance was within the wide range of reasonable professional assistance was contrary to clearly established law.

Dr. Weitz, whom counsel presented at the penalty phase, was qualified as an expert in PTSD. He was of the opinion that Reaves did not meet the criteria for a PTSD diagnosis but that he did meet all of the requirements for a diagnosis of Vietnam Syndrome. He told the jury that and explained what he meant. We have held that "[w]hen mental health is at issue, counsel does not offer ineffective assistance when it later becomes apparent that an expert who would have testified more favorably than the expert who was actually called may have existed." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1244 (11th Cir. 2015) (citing Ward v. Hall, 592 F.3d 1144, 1173 (11th Cir. 2010), and Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997)); see also Elledge v. Dugger, 823 F.2d 1439, 1447 n.17 (11th Cir.), opinion withdrawn in part on denial of reh'g, 833 F.2d 250 (11th Cir. 1987) ("We emphasize that the duty is only to conduct a reasonable investigation. Counsel is not required to 'shop' for a psychiatrist who will testify in a particular way."); cf. Byram v. Ozmint, 339 F.3d 203, 210 (4th Cir. 2003) ("[A] failure to 'shop around' for a favorable expert opinion after an evaluation

48

yields little in mitigating evidence does not constitute ineffective assistance."); Walls v. Bowersox, 151 F.3d 827, 835 (8th Cir. 1998) ("Counsel is not required to continue looking for experts just because the one he has consulted gave an unfavorable opinion.") (quotation marks omitted); Poyner v. Murray, 964 F.2d 1404, 1419 (4th Cir. 1992) ("The mere fact that his counsel did not shop around for a psychiatrist willing to testify to the presence of more elaborate or grave psychological disorders simply does not constitute ineffective assistance."). It was not unreasonable for the Florida Supreme Court to reach the same conclusion that we have in the past.

The Florida Supreme Court did not unreasonably deny relief on Reaves' penalty phase ineffective assistance claim. Because the district court erred in granting habeas relief to Reaves on that ground, we reverse that part of its judgment and remand with instructions to deny the § 2254 petition.

**REVERSED.**[6]

---

[6] While this case was on appeal, Reaves filed a motion to stay further proceedings in this Court pending a decision on his Hurst claim in the state courts. See Hurst v. Florida, 577 U.S. __, 136 S. Ct. 616 (2016). Since then the state trial court has denied that claim and the Florida Supreme Court has dismissed Reaves' appeal of the denial. Accordingly, the motion to stay these proceedings is DENIED AS MOOT.